493 F.2d 314
 NORTHEAST THEATRE CORPORATION, Plaintiff-Appellee,
v.
William W. WETSMAN and Jack Zide, Defendants-Appellants.
NORTHEAST THEATRE CORPORATION, Plaintiff-Appellee,
v.
L & L CONCESSION COMPANY, Defendant-Appellant.
NORTHEAST THEATRE CORPORATION, Plaintiff-Appellee,
v.
TWILITE THEATRE COMPANY and W. Dean Gersell, Defendants-Appellants.
 Nos. 72-1931, 72-1932 and 72-1933.
 United States Court of Appeals, Sixth Circuit.
 Argued Oct. 1, 1973.
Decided Feb. 27, 1974.
 
 James M. Wienner and Frederick Steinhardt, Detroit, Mich., for appellants; Katcher, Feldman & Wienner, Detroit, Mich. on briefs for William M. Wetsman and Jack Zide.
 Walter Shapero, Shapero, Shapero & Cohn, Detroit, Mich. on briefs for L & L Concession Co.
 Travis, Warren, Nayer & Burgoyne, Detroit, Mich., for Twilite and Gersell, by Frederick D. Steinhardt and Harry M. Nayer, Detroit, Mich.
 Eugene Driker, Detroit, Mich., for appellee; Barris, Sott, Denn & Driker, by James A. Simpson, Detroit, Mich. on brief for Northeast Theatre Corp.
 Before PHILLIPS, Chief Judge, EDWARDS, Circuit Judge and KRUPANSKY,* District Judge.
 EDWARDS, Circuit Judge.
 
 
 1
 Appellants appeal from a judgment entered by a District Judge in the United States District Court for the Eastern District of Michigan, Southern Division after trial to the court. The judgment granted to plaintiff-appellee Northeast Theatre Corporation specific performance of a contract to purchase four theatres from defendant-appellant Twilite Theatre Company and for an award for lost profits of $204,553. Jurisdiction is founded on diversity of citizenship.
 
 
 2
 The facts developed in a six-day trial show that Twilite, desiring to sell four drive-in theatres in Michigan, made a proposal on April 13, 1970, to Northeast to buy said theatres. The proposal recited that the purchase price would be $1,400,000 on a 7% Contract, with 29% Down in 1970. It also provided, 'the length of time on the balance would have to be mutually agreed upon.'
 
 
 3
 Appellee Northeast contends, and the District Judge in detailed findings of fact agreed, that after some oral negotiations, which included a definition of pay-out terms and an oral agreement by Northeast and Twilite to keep the offer open until April 30 when they were to talk again, appellee Northeast sent a written acceptance on April 30, 1970, which completed the contract. Appellant Twilite, however, on April 29, 1970, had already made a conditional agreement to sell the four theatres to appellants Wetsman and L & L Concession Company if Wetsman and L & L could obtain the 25% Interest of a Twilite partner named Gersell. This agreement was finally consummated in formal contract documents signed on July 9, 1970, under vhich Wetsman and L & L took possession of the theatres and have been operating them ever since.
 
 
 4
 Appellants contend that there never was an offer and an acceptance which served to take the Northeast transaction out of the statute of frauds. They also contend that the District Judge's findings of fact pertaining to the oral agreement by Twilite to extend the offer to April 30 and to accept Northeast's payout schedule were based on the wrong standard of proof and that the evidence was insufficient to uphold them. Lastly, appellants contend that the District Judge's computation of damages was incorrect as a matter of law. We shall discuss these three issues in order.
 
 1. The Statute of Frauds Issue
 
 5
 The Michigan Statute of Frauds provides in applicable part:
 
 
 6
 Same; contract for interest in lands other than one year lease; sales at auction
 
 
 7
 Sec. 8. Every contract for the leasing for a longer period than 1 year, or for the sale of any lands, or any interest in lands, shall be void, unless the contract, or some note or memorandum thereof be in writing, and signed by the party by whom the lease or sale is to be made, or by some person thereunto by him lawfully authorized in writing . . .. Mich.Comp. Laws Ann. 566.108 (1967).
 
 
 8
 The offer and acceptance relied upon by the District Judge are set out fully hereafter:
 
 
 9
 April 13, 1970 Mr. Summer Redstone Northeast Theatre Corporation Thirty-One St. James Street Boston, Massachusetts 02116 Dear Sumner: After meeting with my partners, we have to come to this decision. We have decided to take $1,500,000.00 cash or $1,400,000.00 on a seven per cent contract with twenty-nine per cent down in 1970. The length of time on the balance would have to be mutually agreed upon. You would, also, have to assume the L & L Concession leases on three theatres, one being expired at this time. As for a breakdown, the attached schedule should give you the information required. For me to give you a further breakdown of each theatre would be almost impossible under our bookkeeping set up. Our admission prices in all four theatres are $1.75 Sunday through Thursday and $2.00 Friday and Saturday. Sincerely yours, TWILITE THEATRE COMPANY (s) W. DEAN GERSELL W. Dean Gersell
 
 April 30, 1970
 
 10
 Mr. Richard J. Ashmun and Mr. W. Dean Gersell, Twilite Theatre Company Ashmun Theatres Strand Theatre Building Caro, Michigan Dear Dick and Dean: As per conversation with you, I had expected to hear from you by today. I realize that you may be tied up in a split meeting, but as I explained to you, we have had a choice between two deals and I have to make a decision; and my deadline on the other deal is today. After talking it over, we have decided to let the other deal go and accept your offer, although I do feel the price is high and the interest rate is high. However, frankly, we have no time for negotiating in view of the necessity for a decision today. Accordingly, we are accepting your offer to sell, as outlined in your letter of April 13 and reaffirmed by you in our phone conversations on Tuesday, April 28. We agree to pay for the four theatres $1,400,000.00 'on a 7% Contract with 29% Down in 1970'. In your telephone conversations, you indicated you desired a ten-year payout, and we are agreed to that. This is the substance of the transaction, and the rest are all details. We are assuming, of course, as you indicated, that you do have good record and marketable title; and the title is insurable. So far as the closing date goes, you indicated you could turn over the theatres almost immediately. We are certainly not inflexible on the date. I would think that thirty days would give enough time for the title check. I congratulate you both. I understand that Dean wants to stay on, and we are looking forward to the possibility of his working for us. Incidentally, you made no request for a deposit, but I am enclosing a check for $25,000.00 which, of course, would be deducted from the 29% On closing. Kindest personal regards.
 
 Sincerely yours, Sumner M. Redstone
 SMR:TB $25,000.00 check enclosed
 
 11
 Absent any other contentions-- and there are several-- these two documents would in our eyes constitute clear and convincing evidence of a legally binding and enforceable contract under the Michigan Statute of Frauds. That Statute, as interpreted by the Supreme Court of Michigan in an early case, provides that the written memorandum 'must be certain and definite as to the parties, property, consideration, premises and time of performance.' Cooper v. Pierson, 212 Mich. 657, 660, 180 N.W. 351, 352 (1920). These two documents taken together appear to us to meet each of the criteria of Cooper. This view is enforced by the fact that the trend of interpretation of Michigan law pertaining to satisfaction of the Statute of Frauds in more recent years has been toward somewhat less rigidity. See Goldberg v. Mitchell, 318 Mich. 281, 28 N.W.2d 118 (1947); Gedvick v. Hill, 333 Mich. 689, 53 N.W.2d 583 (1952); Duke v. Miller, 355 Mich. 540, 94 N.W.2d 819 (1959); and Goslin v. Goslin, 369 Mich. 372, 120 N.W.2d 242 (1963).
 
 21. The Disputed Findings of Fact
 
 12
 The principal other contentions of appellants concerning this transaction pertain to circumstances surrounding the offer and acceptance above. As to these appellants contend 1) that, assuming Twilite's letter dated April 13, 1970, was an offer, it was legally revoked by a counteroffer made by plaintiff Northeast Theatre through its president Redstone in telephone conversations with Ashmun, the spokesman for the Twilite partnership; 2) that, assuming Twilite's letter dated April 13 was an offer, Ashmun, for Twilite, never agreed orally on April 28 to keep Twilite's offer open until April 30 and to call Redstone back on April 30 as claimed by Redstone; 3) that, if Twilite's letter of April 13 was an offer, it was revoked before acceptance by Northeast Theatre by a contract for sale of the theatres made on April 29 between Twilite and appellants Wetsman and L & L Concession Company, and that Northeast had notice of this contract through an agent, Clark, before April 30, and 4) that Redstone's letter of acceptance, dated April 30, was not actually mailed on April 30, 1970.
 
 
 13
 The trouble with these contentions is that the record is so replete with contradictory testimony (particularly from the principal witnesses, Redstone for Northeast Theatre and Ashmun for Twilite), that decision upon each such fact issue depends entirely upon which witness is telling the truth and which is not. The District Judge resolved the credibility issues with specific findings of fact in favor of Northeast Theatre and Redstone. He accepted Redstone's version of his telephone conversations with Ashmun concerning the price as being inquiries rather than a counteroffer. As to holding the offer open, he specifically found that it was 'agreed by Redstone and Richard Ashmun that no action would be taken by either party until they again spoke on Thursday, April 30, 1970.' As to the April 29 oral agreement between Twilite and Wetsman and L & L Concession Company, he found that Clark had not been informed of it and, in any case, was not an agent of Northeast Theatre.[1] He also found that Redstone's letter of acceptance, dated April 30, 1970, had been mailed on April 30.
 
 
 14
 Under Rule 52(a) of the Federal Rules of Civil Procedure, we cannot set aside a District Judge's findings of fact unless they are 'clearly erroneous.' We have weighed all of the counterevidence and argument of appellants and we cannot find in this record a basis for setting any one of them aside as 'clearly erroneous.' The most troublesome one is the question of just when Redstone's letter was mailed.[2] As to it, we note that while there is certainly evidence to support appellants' contention that it was not actually mailed on April 30-- equally certainly there is strong evidence that it was. Under these circumstances we understand Rule 52(a) to command acceptance of the trial judge's findings-- particularly when they rest, as here, in large measure on determinations of credibility of witnesses.
 
 3. Damages
 
 15
 Specific performance for breach of contract is certainly no novel remedy, nor is the award of damages suffered by the offended party during the period of the breach. Goslin v. Goslin, supra; Milner Hotels, Inc. v. Ehrman, 307 Mich. 347, 11 N.W.2d 914 (1943); Restatement of Contracts 384.
 
 
 16
 The judgment of $204,553 was calculated from appellants Wetsman and L & L Concession Company's own books and we see no basis for setting it aside. We do, however, agree that the profits lost by Northeast Theatre ought to be offset by interest upon the down payment which was retained by Northeast during the breach. Presumably appellants Wetsman and L & L will seek to recoup their down payment, likewise with interest.
 
 
 17
 The judgment of the District Court is affirmed as modified above, and the case is remanded for further proceedings consistent with this opinion.
 
 
 
 *
 Honorable Robert B. Krupansky, United States District Judge for the Northern District of Ohio, sitting by designation
 
 
 [1]
 The District Judge in his Memorandum Opinion and Order dealt with and rejected appellants' contention that the oral agreement of April 29 between Twilite and L & L Concession and Wetsman revoked Twilite's prior offer to Northeast. We agree that, for the reasons given by the District Judge, revocation was not accomplished:
 'One who has made an offer to sell property has no power to revoke it merely by making a sale of the property to a third person. Such a power can be expressly reserved; but the offeree must know of the reservation. A sale to a third person may make it hard for the offeror to perform as offered; but the offeree has power of acceptance even after tht property has already been sold, if he is ignorant of such sale.' 1 A. Corbin, Contracts, 39, at 164 (1963).
 
 
 [2]
 Appellants contend that Redstone's letter of acceptance dated April 30 was not mailed until May 4. The envelope actually has an April 30 date marked by the postage meter and a May 4 postmark. If (contrary to what we have written above) we were to assume that appellants were correct in when this letter was mailed, we do not believe such a conclusion would change the result in this case. Redstone also sent a telegram on May 1 to Ashmun which constituted an acceptance of Twilite's offer prior to any notice of cancellation or withdrawal of the offer had been conveyed to Redstone