536 F.2d 476
 Dominick PAMPILLONIA, Plaintiff,
v.
CONCORD LINE, A/S, Defendant and Third-Party Plaintiff-Appellee,
v.
COURT CARPENTRY AND MARINE CONTRACTING CO., Third-Party
Defendant-Appellant,
and
International Terminal Operating Co., Inc., Third-Party Defendant.
 No. 139, Docket 75-7318.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 20, 1975.
Decided Jan. 12, 1976.
 
 William P. Kain, Jr., New York City (Thomas F. Molanphy, Richard V. Licata, and Haight, Gardner, Poor & Havens, New York City, on the brief), for defendant and third-party plaintiff-appellee Concord Line, A/S.
 Victor S. Cichanowicz, New York City (John P. Schaffer, and Cichanowicz & Callan, New York City, on the brief), for third-party defendant-appellant Court Carpentry and Marine Contracting Co.
 Before MOORE and TIMBERS, Circuit Judges, and COFFRIN, District Judge.*
 TIMBERS, Circuit Judge:
 
 
 1
 On April 3, 1969, plaintiff Dominick Pampillonia was employed as a marine carpenter by C. C. Lumber Co., Inc., now Court Carpentry and Marine Contracting Co. (employer). He was injured that day while working aboard the SS Jill Cord which was owned and operated by Concord Line, A/S (shipowner).
 
 
 2
 Plaintiff claimed to have been injured when he slipped and fell on grease or other slippery substance on the vessel's weather deck near No. 5 hatch on the starboard or off-shore side. Stevedores had loaded and stowed the cargo aboard the vessel which lay moored at Pier 2 in Brooklyn. The shipowner had contracted with plaintiff's employer to secure the cargo aboard the vessel. This included chocking, boxing and lashing the cargo.
 
 
 3
 A jury verdict in favor of plaintiff in amount of $80,000 was returned on December 18, 1973 against the shipowner for breach of its warranty of seaworthiness.[1] Immediately following the jury trial, the shipowner's indemnity claim against plaintiff's employer was tried to the court without a jury. The indemnity claim was based on the employer's alleged breach of its warranty to perform the ship carpentry work in a workmanlike manner.
 
 
 4
 The only additional testimony received at the trial of the indemnity claim was that of Captain William Wheeler, an expert witness called by the shipowner. He testified, based on his extensive expeeeeeeriiiiiiienceeeee as a shhhhhip'sssss officer and as a stevedore superintendent, concerning the custom and practice of a ship's carpenter in using grease during the process of lashing down cargo and the practice of plaintiff's employer of using grease in lashing operations which he had observed over the years.
 
 
 5
 Based on the entire record, Chief Judge Mishler concluded, in his memorandum decision of December 21, 1973, that the shipowner had established by a fair preponderance of the credible evidence that the employer had breached its warranty to perform the ship carpentry work in a workmanlike manner. The court's conclusion was based on its specific findings of fact that the employer had placed or dropped grease in an area normally used for passage by longshoremen; that the employer had allowed grease or other slippery substance to remain in an area used as a passageway by plaintiff and other longshoremen, thereby creating a dangerous condition and an unsafe place to work; and that the employer had failed to eliminate the "slippery condition" as required by Section 1918.91(c) of the Safety and Health Regulations for Longshoring, promulgated by the United States Department of Labor. 29 C.F.R. § 1918.91(c) (1975).
 
 
 6
 We hold, based on our careful review of the record, that Chief Judge Mishler's findings of fact are not clearly erroneous but are supported by substantial evidence.[2] Notwithstanding the failure of the expert witness to use the precise term "custom", the import of his testimony was that it was a universal practice to use grease to lubricate lashing components. This evidence of custom permitted the inference that the employer used grease. That finding, in conjunction with the direct evidence that plaintiff had slipped on grease, adequately supported the critical finding that employees of plaintiff's employer had dropped grease on the deck and that on that grease plaintiff had slipped and fallen.
 
 
 7
 Affirmed.
 
 
 
 *
 Hon. Albert W. Coffrin, United States District Judge, District of Vermont, sitting by designation
 
 
 [1]
 Plaintiff's claim of negligence against the shipowner was dismissed by the court during trial. No cross appeal was taken from that ruling
 The shipowner's indemnity claim against the stevedore, International Terminal Operating Co., Inc., was discontinued during trial. There is no issue on appeal with respect to that claim.
 The $80,000 judgment in favor of plaintiff and against the shipowner, entered pursuant to Chief Judge Mishler's memorandum of decision of December 21, 1973, has been paid by the shipowner. No appeal was taken from that part of the judgment.
 
 
 [2]
 It is axiomatic that such findings, so supported, will not be set aside unless clearly erroneous. Fed.R.Civ.P. 52(a); McAllister v. United States, 348 U.S. 19, 20-21 (1954). This is especially so when the trial court's findings involve issues of credibility or the weight to be given to testimony, expert or otherwise. See Empire Transport, Inc. v. United States, 524 F.2d 1, 3, 4 (2 Cir. 1975); King v. Deutsche Dampfs-Ges, 523 F.2d 1042, 1045 & n. 2 (2 Cir. 1975); Interocean Shipping Co. v. National Shipping and Trading Corp., 523 F.2d 527, 534-35 (2 Cir. 1975)