Lawrence W. SUTTON,
Plaintiff-Appellant,

v.

ATLANTIC RICHFIELD COMPANY,
Defendant-Appellee.

No. 79–3345.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 6, 1981.

Decided May 26, 1981.

Jeffrey S. Pop, Pop & Hahn, Beverly Hills, Cal., for plaintiff-appellant.

Paul Grossman, Paul, Hastings, Janofsky & Walker, Los Angeles, Cal., for defendant-appellee.

Before ELY and FERGUSON, Circuit Judges, and SOLOMON,* District Judge.

ELY, Circuit Judge:

Sutton appeals a Fed.R.Civ.P. 41(b) dismissal of his suit alleging a violation of the Age Discrimination in Employment Act (ADEA). 29 U.S.C. § 621 et seq.[1] He contends that the circumstances under which he accepted an early retirement amounted to a constructive discharge and that the Atlantic Richfield Company (ARCO) was improperly motivated by Sutton's age in orchestrating his allegedly coerced retirement. In a bench trial, the District Court dismissed the suit following the close of appellant's case on several alternative grounds: (1) Sutton did not establish a prima facie case of age discrimination; (2) even if Sutton initially established a prima facie case, ARCO met its burden of producing evidence of legitimate, nondiscriminatory reasons for its actions, which reasons Sutton failed to demonstrate were untrue; and (3) even if age played some factor in management's actions, ARCO established other factors showing that it had good cause constructively to discharge Sutton, and thus could avail itself of the affirmative defense of 29 U.S.C. § 623(f)(3).[2]

---

* The Honorable Gus J. Solomon, United States District Judge, District of Oregon, sitting by designation.

1. 29 U.S.C. § 623(a) provides in pertinent part:

It shall be unlawful for an employer—

(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.

2. 29 U.S.C. § 623(f) provides affirmative defenses to an employer which in relevant part are as follows:

On appeal Sutton argues that the trial court's adverse factual findings of no age discrimination were clearly erroneous under Fed.R.Civ.P. 52(a), that the court misapplied the law with respect to finding an ADEA violation, and that it was prejudicial error to deny Sutton's demand for a jury trial.[3] None of these contentions has merit; hence, we affirm.

## FACTS

In March of 1977 Sutton, a 30-year employee and a high-level executive in charge of purchasing, was pressured into accepting an early special retirement. He was 59 years of age at the time of his retirement effective April 1, 1977, and was replaced by a 41-year-old man. The circumstances which prompted ARCO's management to encourage Sutton to retire are the subject of considerable controversy and form the basis of Sutton's age discrimination allegations.

It is not necessary fully to recite the factual circumstances surrounding Sutton's retirement. He bases his claim of unlawful age discrimination upon his direct testimony regarding allegedly discriminatory remarks made by Bressler, a Vice President of Finance & Planning, in face-to-face meetings with Sutton. Sutton contends that Bressler wanted to replace certain older executives who occupied management positions that Bressler believed were developmental—i. e., that he and others orchestrated Sutton's removal so he, Sutton, could be replaced with a young "high-potential" executive who could be groomed as a future officer while serving in the Manager of Purchasing position. Based upon conversations in two meetings in which the men discussed management development and a vacant position within the Purchasing Department, Sutton characterizes Bressler's alleged discriminatory remarks as, "I would suggest you find a well-qualified, younger man, someone I can replace you with." He construed these words as conveying a threat to him by Bressler that Bressler wanted to replace Sutton because Sutton was too old. Sutton did not offer other direct evidence of discriminatory animus, but rather focused his arguments on his generally good performance in the company and ARCO's manipulation of the eligibility requirements of its retirement plan in its effort to pressure Sutton to retire.

---

(f) It shall not be unlawful for an employer, employment agency, or labor organization—
(1) to take any action otherwise prohibited under [the sections specifying prohibited employer practices] . . . where the differentiation is based on reasonable factors other than age;

.　　.　　.　　.　　.

(3) to discharge or otherwise discipline an employee for good cause.

3. Sutton did not make a timely demand for a jury trial under Fed.R.Civ.P. 38(b), which is deemed a waiver under Rule 38(d). Sutton contends that the automatic waiver provision of Rule 38(d) should not apply because the right to a jury trial did not exist until the Supreme Court expressly recognized its existence in *Lorillard v. Pons*, 434 U.S. 575, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978). This argument is specious. The *Lorillard* decision did not create a right to a jury trial in ADEA actions: it merely recognized its existence under the existing statutory framework. Two of the three circuits which had ruled on the question had determined that there was a right to a jury trial. *Rogers v. Exxon Research and Engineering Co.*, 550 F.2d 834 (3d Cir. 1977); *Pons v.*

*Lorillard*, 549 F.2d 950 (4th Cir. 1977). Further, even under Sutton's theory, the right to a jury trial was absolute as of the *Lorillard* decision of February 28, 1978, and Sutton should have filed a jury demand within 10 days of that decision to be timely under his argument. Sutton did not make his demand until April 7, 1978, one day after Congress formally incorporated via an amendment the right to a jury trial recognized in *Lorillard*.

Sutton also apparently argues that the judge abused his discretion in denying a Rule 39(b) motion for a jury trial. Fed.R.Civ.P. 39(b) provides in relevant part:

[B]ut, notwithstanding the failure of a party to demand a jury in an action in which such a demand might have been made of right, the court in its discretion upon motion may order a trial by a jury . . . .

Sutton's failure to make timely demand was due to oversight and inadvertence as to the state of the law pre-*Lorillard*, and for several weeks post-*Lorillard*. Under these circumstances, a denial of a Rule 39(b) motion is not an abuse of discretion. *Mardesich v. Marciel*, 538 F.2d 848, 849 (9th Cir. 1976); *accord Galella v. Onassis*, 487 F.2d 986, 996 (2d Cir. 1973).

■ The court did not credit Sutton's testimony and found that at no time did Bressler express an intention to remove Sutton on the basis of his age or otherwise make any statement indicative of age discrimination against Sutton. Bressler's contrary testimony was that he was criticizing Sutton for not developing management talent within his department, and he stated that a vacant management position should be used as a developmental role for one of the bright young men in the department rather than be consolidated with another position. Even if the court credited Sutton's testimony as to Bressler's alleged remarks, the court could properly find that the remarks did not indicate a discriminatory animus, but rather were an admonition that Sutton was not meeting his responsibility to develop younger executives ultimately to succeed himself or other employees approaching retirement age.

ARCO, through the testimony of Sutton's direct but hostile witnesses, presented several reasons supported by substantial evidence indicating that the decision to seek Sutton's early retirement was not motivated by Sutton's age. These reasons, credited by the District Court and set forth in the findings of fact, centered upon several instances of intemperate and impolitic actions by Sutton in December of 1976 and January of 1977. Apparently, the December 1976 appointment of Snyder as a new supervisor to Sutton, a long-time contemporary and rival within the company, immediately led to unfortunate internecine personality and management style clashes—largely between Sutton and his new supervisor and Bressler. The record indicates that Sutton began to repeatedly breach corporate protocol: He approached ARCO's chief executive officer without giving advance notice to superiors in his chain of command. He prepared and presented an executive committee report and refused to share the report and recommendations therein with his superiors prior to the presentation: The report recommended that the Purchasing Department be decentralized so as to remove Sutton's immediate supervisors from his chain of command, and was adversely received. He misrepresented the nature of his communication and the extent of his correspondence with ARCO's chief executive and in other ways attempted to go over the heads of his chain of command.

The court found that these instances of Sutton's conduct constituted reasonable factors other than age which motivated ARCO's management and also established good cause for Sutton's constructive discharge. On at least two instances, Sutton was told of management's displeasure with his recent performance and its opinion that it would be difficult to reconcile management's objectives and Sutton's attitude and performance.

■ In late January 1977, ARCO's management agreed to inform Sutton of his shaky status within the company and to offer him an enhanced benefits retirement plan under an already expired 1975 Voluntary Early Retirement Supplemental Policy (plan),[4] conditioned upon his actual retirement by April 1, 1977. The court's findings of fact succinctly characterize ARCO's utilization of the plan:

"[T]he [management] consensus reached was that Sutton would be informed of management's displeasure with his job performance and his actions of

---

4. The 1975 plan had expired as of December 31, 1976. ARCO waived that and other eligibility requirements to allow Sutton to receive the enhanced benefits available under the plan. In Sutton's case, the enhanced benefits were approximately $1,000 a month above his normal retirement benefits of approximately $2,000 a month.

Sutton also argues that ARCO's use of the plan to coax his retirement, which by its terms incorporated a 55-year-old age requirement, was a per se violation of the ADEA. He argues

that age necessarily played a factor in that Sutton's age prompted ARCO to offer the plan as a "carrot" with the "stick" being the negative evaluation of his future with the company. We do not agree. An employer's extension of extra-contractual benefits to an employee—whose termination the employer has, on neutral principles, decided to seek—is not violative of the ADEA. Sutton must prove that ARCO's motivation in desiring his termination was based on illicit age criteria.

December, 1976 and January, 1977, and be told that substantial improvement would be necessary to remain in his position, that it would be difficult for him to convince management of such improvement. If, after knowing where he stood in the estimation of management, he wished to retire, he would be permitted to retire under the 1975 supplement plan.... Each of the ... officials preferred that Sutton retire and thus leave the company's employ rather than remain on the job."

Sutton reluctantly accepted retirement in late February 1977 and instituted this suit some 10 months later. The District Court found, and we agree, that he had two alternatives: (1) continuing in his employment, under an implied threat of possible demotion or discharge, having been accurately informed of his status with management, and knowing that like all other active employees he could only count on normal retirement benefits based upon his last 5 years earnings at such time as he chose to retire, or (2) accepting an immediate retirement under a special retirement plan which would bring him an extra $1,000 a month for life, which plan would not be available if he continued in active employment.

## DISCUSSION

■ The District Court found for purposes of ruling on the 41(b) motion that Sutton was constructively discharged[5] by ARCO in the manner and circumstances in which it induced Sutton's retirement, but held that such discharge did not violate the ADEA because Sutton failed to prove that his age was a determining factor in ARCO's action. The court applied correct legal standards and evidentiary guidelines, and the factual findings, dependent upon credibility determinations largely insulated from appellate review, support the Rule 41(b) dismissal.

■ The evidentiary guidelines allocating the burdens and presentation of proof in discrimination cases as set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and its progeny, though specifically addressed to Title VII cases, 42 U.S.C. § 2000e *et seq.*, are generally applicable to age discrimination cases. *See Smith v. University of North Carolina*, 632 F.2d 316, 332–33 (4th Cir. 1980); *Harpring v. Continental Oil Co.*, 628 F.2d 406, 408–09 (5th Cir. 1980); *McCorstin v. United States Steel Corp.*, 621 F.2d 749, 752–54 (5th Cir. 1980); *Schwager v. Sun Oil Co. of Pennsylvania*, 591 F.2d 58, 60–61 (10th Cir. 1979); *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1014–16 (1st Cir. 1979); *Cova v. Coca-Cola Bottling Co. of St. Louis*, 574 F.2d 958, 959–60 (8th Cir. 1978). The adoption of the *McDonnell Douglas* Title VII guidelines as to the ordering of proof in age discrimination cases follows logically from the similar purposes and structure of Title VII and the ADEA. The statutes share similar aims and substantive prohibitions—the elimination of arbitrary discrimination in the work place. As the Supreme Court has noted, "the prohibitions of the ADEA were derived *in haec verba* from Title VII." *Lorillard v. Pons*, 434 U.S. 575, 584, 98 S.Ct. 866, 872, 55 L.Ed.2d 40 (1978); *e. g. compare* 42 U.S.C. § 2000e–2(a)(2) *with* 29 U.S.C. § 623(a)(2).

■ These guidelines are relatively simple. First, plaintiffs have the burden of proving by a preponderance of the evidence a prima facie case of discrimination. If successful, a burden of production shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's [discharge]." *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. The defendant's explanation of its reasons must be clear and reasonably specific, and serves two functions: "to meet the plaintiff's pri-

---

**5.** Because it is not necessary to our disposition, we do not decide whether ARCO caused Sutton's working conditions to become so intolerable as to amount to a constructive discharge. *See J. P. Stevens & Co. v. NLRB*, 461 F.2d 490, 494 (4th Cir. 1972). *Cf. Toussaint v. Ford Mo-*

*tor Co.,* 581 F.2d 812, 815 (10th Cir. 1978). It would be premature to so hold when only Sutton presented his case. For purposes of our review, we assume that Sutton was constructively discharged.

ma facie case by presenting a legitimate reason for the action and to frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext. The sufficiency of the defendant's evidence should be evaluated by the extent to which it fulfills these functions." *Texas Dep't of Community Affairs v. Burdine,* — U.S. —, —, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981). The plaintiff, who always retains the burden of persuasion, must then have the opportunity "to demonstrate that the reason was not the true reason for the employment decision." *Id.; see McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. at 1825. A plaintiff may attempt to show that the proffered reasons are pretextual and mask discrimination "directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine,* — U.S. at —, 101 S.Ct. at 1095.

We follow the other circuits in adopting the *McDonnell Douglas* allocation of the burdens and ordering of proof in suits brought under the ADEA. These guidelines were followed here. Sutton simply did not carry his burden of persuading the trial court that he was the victim of age discrimination. One, the court found that Sutton's evidence, largely resting upon his own testimony regarding Bressler's alleged discriminatory remarks and which was not credited, did not establish a prima facie case of age discrimination. And two, the court found that even if a prima facie case was established, ARCO sufficiently rebutted Sutton's prima facie case by presenting legitimate reasons for its actions which Sutton failed to demonstrate were pretextual.[6] The Rule 41(b) dismissal followed.

█ We affirm on the second ground. Even if Sutton made out a prima facie case,[7] which he quite possibly did with his direct but uncredited testimony that Bressler indicated that he wanted to replace Sutton with a younger man, ARCO fully met its burden of producing legitimate reasons for its actions. Sutton unsuccessfully attempted to demonstrate that ARCO's proffered reasons were untrue by attacking the credibility of their explanation.

Rule 52(a) of the Federal Rules of Civil Procedure governs review of factual findings and provides that findings shall not be set aside unless clearly erroneous. An appellate court cannot find that findings of fact are clearly erroneous unless "on the entire evidence [it] is left with the definite and firm conviction that a mistake has been committed." *Zenith Corp. v. Hazeltine,* 395 U.S. 100, 123, 89 S.Ct. 1562, 1576, 23 L.Ed.2d 129 (1969); *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948).

To a substantial extent Sutton's attack on the court's findings draws into question the credibility determinations made by the trial judge. Appellate review of such determinations is extremely limited. Our court has stated that the trial court's appraisal of the credibility of witnesses is to be accepted without challenge. *Nuelson v. Samuelson,* 293 F.2d 454, 460 (9th Cir. 1961). Other courts simply state that Rule 52(a) practically shields factual findings which rest in large measure upon credibility determinations, but still purport to apply the

---

**6.** The court also found that these reasons constituted "good cause" for a constructive discharge even if age also played a factor, and thus ARCO was entitled to the affirmative defense of 29 U.S.C. § 623(f)(3). We express no view on this issue, but note that ARCO's management in discussing what to do with Sutton had decided that an outright discharge was an inappropriate response to Sutton's conduct, and instead gave Sutton his choice of options.

**7.** In the discrimination context, the phrase prima facie case denotes the establishment of a

legally mandatory, rebuttable presumption. *Burdine,* — U.S. at — n, 7, 101 S.Ct. at 1095 n. 7. "Establishment of a prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee. *If the trier of fact believes the plaintiff's evidence,* and if the employer is silent in the face of the presumption, the court must enter judgment for the plaintiff because no issue of fact remains in the case." *Id.* — U.S. at —, 101 S.Ct. at 1095 (emphasis added).

clearly erroneous standard. *See Pampillonia v. Concord Line, A/S,* 536 F.2d 476, 477 (2d Cir. 1976); *Wagner Electric Corp. v. Local 1104, International Union of Elec., R. R. & Mach. Workers,* 496 F.2d 954, 956 (8th Cir. 1974); *Northeast Theatre Corp. v. Wetsman,* 493 F.2d 314, 318 (6th Cir. 1974). We have reviewed the entire record and find ample support for the trial court's credibility determinations and findings. We most certainly do not have "a definite and firm conviction that a mistake has been committed." In sum, the evidence fully supports the trial court's finding that ARCO did not discriminate against Sutton because of his age, and that ARCO's actions were precipitated by an unfortunate breakdown in intracorporate management relations.

The judgment is

AFFIRMED.