C. V. TOUSSAINT, Plaintiff-Appellant,

v.

FORD MOTOR COMPANY, a corporation, Defendant-Appellee.

No. 76–2110.

United States Court of Appeals,
Tenth Circuit.

Argued May 10, 1978.

Decided Aug. 9, 1978.

Robert L. Uhlig, Kansas City, Kan. (Blake & Uhlig, Kansas City, Kan., on brief), for plaintiff-appellant.

Robert L. Driscoll, Wichita, Kan. (Stinson, Mag, Thomson, McEvers & Fizzell, Kansas City, Mo., and Weeks, Thomas, Lysaught, Bingham & Mustain, Kansas City, Kan., on brief), for defendant-appellee.

Before McWILLIAMS, BREITENSTEIN and LOGAN, Circuit Judges.

McWILLIAMS, Circuit Judge.

This is an age discrimination case in which Charles V. Toussaint, age 61, claims that he was discriminated against on account of age by his employer, the Ford Motor Company, and that as a result thereof he was coerced into taking special early retirement to his detriment. The case was tried without a jury, and the trial court found, in essence, that Ford Motor Company did not discriminate against Toussaint on account of his age and that Ford's actions were prompted only by changed economic circumstances. On appeal, our task as an appellate court is to determine whether, under Fed.R.Civ.P. 52, the trial court's critical findings are clearly erroneous. If they are not, then it is our duty to affirm. Our study of the record convinces us that the trial court's findings are not clearly erroneous and, on the contrary, are amply supported by the record. On that basis, we affirm.

The action was brought under the provisions of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, et seq., and the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 216. As indicated, this was a trial to the court. The plaintiff and his wife both testified and two depositions were offered and received. Ford Motor Company called some four witnesses by way of defense. We are not here concerned with any problems relating to evidentiary matters, and, of course, this being a trial to the court, there were no instructions. So, the case boils down to a simple dispute between Toussaint and the Ford Motor Company as to what were the true facts and circumstances surrounding Toussaint's decision to take special early retirement on April 1, 1974.

During the fall of 1973, following commencement of the Arab oil embargo, Ford experienced rapidly declining new car sales. During December, 1973, new car sales were approximately 25% lower than the prior year's level for that month. As a result of this serious decline in business, Ford initiated a series of companywide reductions in employee force commencing in early 1974, seeking to eliminate those jobs which were least essential to continued operation. Out of some 3,000 salaried positions, it was in time determined that 206 salaried positions would be eliminated. Toussaint's position was one of those to be eliminated.

At the time, Toussaint was employed as a District Affairs Manager for the Central Region, headquartered in Kansas City, Missouri. He had been serving in that position since 1970. The position of regional District Affairs Manager was a relatively new one. Ford first created the position of District Affairs Manager for the Northeast Region in 1970. The principal job responsibility of a District Affairs Manager was to assist the district and regional sales managers in acting as liaison between the factory and its dealers.

Following the successful experience in Ford's northeast marketing area, it was determined to appoint a District Affairs Manager for each of Ford's five marketing areas within the United States. Accordingly, in 1970, a Regional Affairs Manager was appointed for the Southeast Region (Atlanta, Georgia), the Great Lakes Region (Chicago, Illinois), the Central Region (Kansas City, Missouri), and the Western Region (San Jose, California), in addition to the existing District Affairs Manager for the Northeast Region (Pennsauken, New Jersey). Toussaint, who since 1960 had been serving as District Sales Manager, Kansas

City District, at a salary grade 14 position, was appointed in October, 1970, to serve as Dealer Affairs Manager for the Central Region, at a salary grade 13 position. Toussaint continued to serve in that position until April 1, 1974, when he took special early retirement, which he claims he was "coerced into" by Ford's discriminatory tactics.

As indicated, Ford determined to eliminate 206 salaried positions in its effort to retrench in the face of declining sales. In this regard it was further determined to eliminate three of the five District Affairs Managers and allow the job responsibility of those three to revert to the respective district and regional sales managers, who had performed those duties prior to 1970. Ford was then faced with a management decision as to which three of the five positions should be eliminated. The decision was to retain the position of District Affairs Manager for the Northeast and Western Regions and to eliminate the other three positions. This decision, according to Toussaint's supervisor, was based on the belief that the Northeast and Western Regions were the most "volatile" in that they presented more factory-dealer problems than the other three, and he unequivocally declared that the decision to eliminate the positions of District Affairs Manager for the Southeast, Great Lakes, and Central Regions had absolutely nothing to do with Toussaint's age. It was also decided at that time that the persons then serving as District Affairs Managers for the Northeast and Western Regions should continue to serve in such positions, since they were obviously most familiar with those territories.

The decision to eliminate three of the five positions of District Affairs Managers was made in early 1974, and Toussaint was the first to be contacted in connection therewith. At that time, the position of District Affairs Manager for the Southeast Region was vacant, the person who had held the position having just retired. Of the remaining four, Toussaint was the oldest. Toussaint also had seniority over the other District Affairs Managers, having been with Ford Motor Company for nearly 28

years. In February, 1974, Toussaint was first advised that his position was being eliminated in an economy move. Ford did not propose to discharge any of the District Affairs Managers whose positions were being eliminated. Rather, they would be transferred to other positions, which would generally involve a geographic move and quite probably a reduction in salary. Because of his age and years of service, Toussaint, unlike the District Affairs Managers in the two other regions where the positions were also being eliminated, was eligible for special early retirement, which could be taken by mutual consent of both the employee and Ford. It was because Toussaint had this "option," which the others did not, that prompted Ford to contact Toussaint first. Toussaint's supervisor explained that it would be a waste of time to attempt to find another position for Toussaint if, in fact, he preferred to take special early retirement.

Toussaint and his supervisor, one William P. Conners, testified at length concerning their several meetings in February, 1974. Their testimony was in substantial accord in most particulars. There was one dispute, however. Toussaint testified that Conners informed him that "right or wrong," it was Ford's policy "to move the older fellows out first." Conners flatly denied making any such statement, and testified that the decision to eliminate the position of District Affairs Manager for three regions, including that for the Central Region, had absolutely nothing to do with Toussaint's age.

After mulling the problem over, and after much agony, according to Toussaint, he decided to take special early retirement, effective April 1, 1974. As indicated, the alternative was to take another position with Ford, which in all probability would involve a move and reduction in salary. In addition, there was not at the moment an immediate opening for Toussaint, though there was mention of a possible move to Dearborn, Michigan. In May, 1974, Toussaint complained to the Department of Labor that he had been discriminated against on account of his age by Ford. Ford, in due

time, was contacted by representatives of the Department of Labor, and was advised, among other things, that Toussaint was willing to accept a transfer from the Kansas City, Missouri area. In July, Ford advised Toussaint that there was an opening for him in the office at Dearborn, Michigan, at grade 12, but apparently with no immediate reduction in what his old salary had been. Toussaint refused this offer as being "demeaning," adding that it was about the same offer as had been made him in February.

To round out the picture, by January 1, 1975, the only remaining District Affairs Manager was in the Northeast Region, all others, including that for the Western Region, having by that time been eliminated. The District Affairs Managers for both the Great Lakes and Western Regions had themselves been transferred to other positions at lower grade levels.

The trial court found, in effect, that Toussaint's age was not a factor in any of Ford's management decisions leading up to Toussaint's voluntary election to take special early retirement, as opposed to continued active employment in a different position. On appeal, Toussaint argues that the trial court's findings were clearly erroneous under Fed.R.Civ.P. 52, and that, on the evidence, the trial court was, in effect, compelled to find that Toussaint had been discriminated against on account of age and coerced into taking special early retirement. With such argument, we are not in accord.

■ An appellate court may not conclude that findings of a trial court are clearly erroneous unless "on the entire evidence [it] is left with the definite and firm conviction that a mistake has been committed." *Zenith Corp. v. Hazeltine*, 395 U.S. 100, 123, 89 S.Ct. 1562, 1576, 23 L.Ed.2d 129 (1969); *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 1147 (1948). That same standard has been applied in cases involving alleged violation of the Age Discrimination in Employment Act of 1967. *Usery v. Tamiami Trail Tours, Inc.*, 531 F.2d 224 (5th Cir. 1976); *Surrisi v. Conwed Corp.*, 510 F.2d 1088 (8th Cir. 1975).

We have reviewed the entire record and we most certainly cannot say that we have "a definite and firm conviction that a mistake has been made." On the contrary, in our view, the findings of the trial court find ample support in the record.

■ In a case of this type, the plaintiff must prove more than simply the fact that he was within the protected age group and that he was adversely affected by a decision of management relating to conditions of employment. *Bishop v. Jelleff Assocs.*, 398 F.Supp. 579, 593 (D.D.C.1974). Assuming that Toussaint established, *prima facie*, discrimination based on age, which he quite possibly did with his testimony that Conners, his supervisor, said Ford was moving "the older fellows out first," Ford thereafter fully met its burden of going forward with evidence tending to show that its several actions were not motivated by Toussaint's age, but were prompted by the economic realities of the time. *Bittar v. Air Canada*, 512 F.2d 582 (5th Cir. 1975); *Price v. Maryland Cas. Co.*, 391 F.Supp. 613, 625 (S.D.Miss.1975). In sum, the evidence fully supports the trial court's finding that Ford did not discriminate against Toussaint because of his age, and that its actions were precipitated by an economic turndown which required retrenching.

■ Nor is the trial court's related finding that Toussaint was not "coerced" into taking special early retirement clearly erroneous. Under Ford's special early retirement plan, an employee could be retired at Ford's option or by the mutual consent of Ford and the employee involved. As a matter of policy, however, Ford did not involuntarily retire eligible personnel during its cost reduction program. This, then, insofar as Toussaint is concerned, was a voluntary retirement program dependent upon the mutual consent of both himself and Ford. It is agreed that Toussaint gave his consent to special early retirement on February 19, 1974, and he would now escape the effect of such consent by claiming coercion. In this regard, it is sufficient to simply state that the trial court's finding that there was no coercion is not clearly erroneous. The rec-

ord is amply sufficient to support the finding that this was a studied choice by Toussaint as the preferred way out of a difficult situation.

Judgment affirmed.