824 F.2d 1537
 44 Fair Empl.Prac.Cas. 391,
43 Empl. Prac. Dec. P 37,229
Edward S. FURR, Plaintiff-Appellee,
Lynden E. Petersen, Daniel F. O'Connell, and James W. Hunt,
Plaintiffs-Appellees/Cross-Appellants,
and
Jon A. Easter, Lee W. Fowler, and Marvin C. Brown,
Plaintiffs-Appellants,
v.
AT & T TECHNOLOGIES, INC., Defendant-Appellant/Cross-Appellee.
 Nos. 85-1998, 85-2008.
 United States Court of Appeals,
Tenth Circuit.
 July 7, 1987.
 
 Sander N. Karp (Shelley P. Dodge also of Karp & Dodge, with him on the briefs) Denver, Colo., for plaintiff-appellee Edward S. Furr.
 Thomas J. Burke, Jr. of Jones, Meiklejohn, Kehl & Lyons, Denver, Colo., for plaintiffs-appellees/cross-appellants Lynden E. Petersen, James W. Hunt and Daniel F. O'Connell and plaintiffs-appellants Jon A. Easter, Lee W. Fowler and Marvin C. Brown.
 David W. Carpenter (Rex E. Lee and Patrick S. Casey, also of Sidley & Austin, Chicago, Ill., and Lee Dale, Sherman & Howard, Denver, Colo., Joseph Ramirez and Laurel J. McKee, of counsel, with him on the briefs), for defendant-appellant/cross-appellee AT & T Technologies, Inc.
 Before LOGAN and MOORE, Circuit Judges, and BROWN, District Judge.*
 LOGAN, Circuit Judge.
 
 
 1
 Seven employees of AT & T Technologies, Inc., formerly Western Electric Co., Inc. (Technologies) brought this action against Technologies under the Age Discrimination in Employment Act, 29 U.S.C. Secs. 621-634 (ADEA), alleging willful age discrimination in that company's failure to promote them to supervisory positions. A jury found that Technologies had not unlawfully discriminated against three plaintiffs, Jon A. Easter, Lee W. Fowler, and Marvin C. Brown, but found Technologies liable to four other plaintiffs, Edward S. Furr, Lynden E. Petersen, Daniel F. O'Connell, and James W. Hunt. In answers to special interrogatories, the jury found that each of these plaintiffs had been denied promotion because of his age, in willful violation of the ADEA; that Furr, Petersen, and O'Connell should have been promoted August 15, 1978; and that Hunt should have been promoted May 1, 1981. The United States District Court for the District of Colorado subsequently entered judgment for the four successful plaintiffs in the amount of $438,699.06, including back pay and liquidated damages totalling $331,256.56 and stipulated attorney's fees of $107,442.50.[1]
 
 
 2
 On appeal, Technologies alleges that (1) the jury's finding of liability for age discrimination is fatally flawed because it was based on promotions that occurred outside the limitations periods applicable to the ADEA; (2) the award of liquidated damages must be reversed because the court improperly found that the ADEA violations at issue were willful; and (3) the entire award of damages must be set aside because the court utilized improper and incorrect earnings information.
 
 
 3
 The unsuccessful plaintiffs below, Easter, Fowler, and Brown, have also appealed to this court, alleging that the district court's jury instruction on the issue of liability for intentional age discrimination imposed too heavy a burden of proof on plaintiffs. Finally, the successful plaintiffs below, Petersen, O'Connell, and Hunt, cross-appeal, alleging that the court erred in refusing to authorize reimbursement of expert fees and certain deposition fees.
 
 
 4
 All seven plaintiffs are long-time Technologies employees born between 1925 and 1933, who began their careers as installers of telephone equipment at the lowest grade and rose to the position of installation supervisor by the early 1970s. Between 1973 and 1975, during a period of economic recession, all installers with less than ten years of service were discharged, and thirty-six of eighty-six supervisors, including the seven plaintiffs here, were demoted.[2]
 
 
 5
 In 1978, Technologies created seventeen new installation supervisor positions, of which eight were filled by women or by black or hispanic men under an affirmative action plan, and five others by repromoted former supervisors. The ages of the four other promotees ranged from thirty-six to forty-two; plaintiffs' ages then ranged from forty-four to fifty-two.[3] In 1979 and 1980, a forty-three-year-old white man and a twenty-five-year-old woman, neither a former supervisor, were promoted to supervisory positions. During 1981, after Technologies had abandoned its affirmative action plan because the 1978 promotions had "so largely achieved its affirmative action goals," Brief for Defendant-Appellant at 10, Technologies filled four new installation supervisor positions with three white men and one woman, ranging in age from twenty-four to forty. Two white men and one woman were promoted May 1, 1981; one white man was promoted on August 17, 1981. None of these promotees was a former supervisor.
 
 
 6
 All plaintiffs except Furr filed EEOC charges on August 20, 1981; Furr filed his EEOC charge on January 27, 1982. Furr filed his ADEA suit in the District of Colorado on June 9, 1982; the remaining six plaintiffs filed suit on March 25, 1983, also in the District of Colorado. The court granted Technologies' motion to consolidate the suits for trial.
 
 
 7
 * To establish a prima facie case of intentional age discrimination, each plaintiff must show that he (1) was within the protected age group at the time of the failure to promote; (2) was qualified for promotion; (3) was not promoted; and (4) was passed over for an available promotion in favor of someone younger. See Steckl v. Motorola, Inc., 703 F.2d 392, 393 (9th Cir.1983); see also Cockrell v. Boise Cascade Corp., 781 F.2d 173, 177 (10th Cir.1986); Higgins v. State of Oklahoma ex rel. Oklahoma Employment Security Commission, 642 F.2d 1199, 1201 (10th Cir.1981). The burden then shifts to the defendant to meet the presumption of discrimination created by a prima facie showing by articulating one or more legitimate, nondiscriminatory reasons for the plaintiff's nonpromotion. The plaintiff retains the ultimate burden of persuasion, which he may meet by showing directly that age was more likely a determining factor in the employment decision, or indirectly by showing that the employer's proffered explanation is merely a pretext. See U.S. Postal Board of Governors v. Aikens, 460 U.S. 711, 714-16, 103 S.Ct. 1478, 1481-82, 75 L.Ed.2d 403 (1983); EEOC v. Prudential Savings and Loan Association, 763 F.2d 1166, 1170 (10th Cir.), cert. denied, --- U.S. ----, 106 S.Ct. 312, 88 L.Ed.2d 289 (1985); Blim v. Western Electric Co., Inc., 731 F.2d 1473, 1477 (10th Cir.), cert. denied, 469 U.S. 874, 105 S.Ct. 233, 83 L.Ed.2d 161 (1984).
 
 
 8
 In the instant case, there is no dispute that the prevailing plaintiffs were within the class protected by the ADEA at all times relevant to our consideration. Although Technologies vigorously disputed the "qualified for promotion" factor, each successful plaintiff presented substantial evidence from which the jury could conclude that he was qualified for the supervisory position. Technologies also does not dispute that plaintiffs were not repromoted, and that promotions were available and were awarded to other individuals. An examination of the promotion history indicates that the jury fixed the date on which three successful plaintiffs, Furr, Petersen and O'Connell, should have been repromoted as August 15, 1978, the date of Technologies' first promotions after three individuals younger than all plaintiffs were promoted, excluding promotions made under an affirmative action plan and repromotions of other former supervisors. The jury fixed the date upon which successful plaintiff Hunt should have been promoted as May 1, 1981, when two younger individuals were promoted, neither of whom was a former supervisor or fell within an affirmative action category.
 
 
 9
 Plaintiffs challenged Technologies' promotions to installation supervisor as evidence of a systematic company policy and practice of age discrimination, from the time it created new supervisory positions in 1978, and continuing at least through August 1981. Technologies offered three legitimate nondiscriminatory reasons for its promotion decisions: affirmative action, geographic considerations, and technical job qualifications. Finally, each plaintiff offered evidence to rebut the employer's alleged nondiscriminatory reasons. Plaintiffs also presented testimony of specific instances of discriminatory statements relevant to Technologies' failure to repromote them and introduced into evidence a Technologies' management report, the Conover Report, for the express purpose of showing an overall company policy of age discrimination.
 
 
 10
 Under the ADEA, plaintiffs have 180 days from the date of a discriminatory act to file a charge with the EEOC and two years from the date of a discriminatory act (three years if an act is willful) to file a complaint in federal district court. 29 U.S.C. Sec. 626(d)(1) and (e)(1); 29 U.S.C. Sec. 255(a). Technologies argues that the district court improperly allowed the jury to consider plaintiffs' challenges to promotions that occurred as early as January 1978, and that the verdicts for Furr, Petersen and O'Connell must be reversed, as based on promotions that occurred outside the statutory filing periods. AT & T also argues that the verdict for Hunt must be reversed because it was compromised by the jury's consideration of promotions outside the filing periods.
 
 
 11
 A claim of age discrimination, however, may be based on a continuing policy and practice of discrimination that began before the statutory filing period, as long as the employer continues to apply the discriminatory policy and practice to a point within the relevant filing period, and plaintiff is not merely complaining of the continuing effects of a discriminatory practice that existed only before the relevant filing period. There must be at least one instance of the discriminatory practice within the filing period for the continuing violation theory to apply. See Delaware State College v. Ricks, 449 U.S. 250, 256-58, 101 S.Ct. 498, 503-04, 66 L.Ed.2d 431 (1980); Pike v. City of Mission, Kansas, 731 F.2d 655, 660-61 (10th Cir.1984); Rich v. Martin Marietta Corp., 522 F.2d 333, 348 n. 15 (10th Cir.1975). See also Taylor v. Home Insurance Co., 777 F.2d 849, 856-57 (4th Cir.1985), cert. denied, --- U.S. ----, 106 S.Ct. 2249, 90 L.Ed.2d 695 (1986); Trevino v. Celanese Corp., 701 F.2d 397, 402-03 & 403 n. 7 (5th Cir.1983); Scott v. Pacific Maritime Association, 695 F.2d 1199, 1204-06 (9th Cir.1983); Jewett v. International Telephone and Telegraph Corp., 653 F.2d 89, 91 (3d Cir.), cert. denied, 454 U.S. 969, 102 S.Ct. 515, 70 L.Ed.2d 386 (1981); Shehadeh v. Chesapeake & Potomac Telephone Co., 595 F.2d 711, 724-26 (D.C.Cir.1978).
 
 
 12
 Some of the promotion decisions challenged by plaintiffs as discriminatory took place within the relevant filing periods. Discriminatory acts occurring before the filing periods are relevant evidence of the continuing unlawful practice and its discriminatory intent, and are used by the courts to fashion a remedy and determine damages. See McKenzie v. Sawyer, 684 F.2d 62, 72 (D.C.Cir.1982); Stewart v. CPC International, Inc., 679 F.2d 117, 121 (7th Cir.1982). Accordingly, we reject Technologies' contention that the court improperly permitted the jury to consider promotion decisions before the statutory filing periods.[4]
 
 
 13
 Technologies argues further, with respect to plaintiffs Furr, Petersen and O'Connell, that the only discriminatory conduct found by the jury was Technologies' failure to promote each of these plaintiffs on August 15, 1978, more than three years before they filed EEOC charges. Consequently, Technologies contends, the finding of liability to these plaintiffs must be reversed. In support of this argument, it argues that plaintiffs "made no attempt to prove a 'continuing' age-based promotion policy from 1978 to 1981," but rather "mounted separate challenges to each of Technologies' 19 remote promotion decisions...." Brief for Defendant-Appellant at 31. It is true that the continuing violation theory may not be used to challenge discrete, unrelated acts occurring entirely outside the statutory filing periods. See Milton v. Weinberger, 645 F.2d 1070, 1075-77 (D.C.Cir.1981); Molybdenum Corp. of America v. EEOC, 457 F.2d 935, 936 (10th Cir.1972). But Technologies' argument misrepresents the terms of this litigation.
 
 
 14
 From its inception, this case was litigated by the plaintiffs on the basis of a continuing policy and practice of age discrimination on the part of Technologies, and clearly understood by the court and all parties to be pursued by plaintiffs on that basis. The focus of such an employment discrimination case is the pattern or practice of discrimination, which must continue into the statutory filing period, of which the repeated employment decisions are evidence. See, e.g., McKenzie, 684 F.2d at 72. To establish substantive liability, plaintiffs must allege and prove that at least one discriminatory employment decision occurred within the filing periods. Plaintiffs may bring suit for one or more discriminatory acts occurring before the limitations period, and may recover damages based on those injuries "if the plaintiff can demonstrate that the practice has actually continued into the 'present'--that is, into the time period relevant to the date the charge of discrimination was filed. At least one discriminatory act must have occurred within the charge-filing period." Stewart, 679 F.2d at 121 (emphasis in original); see also Pike, 731 F.2d at 660; McKenzie, 684 F.2d at 72; Jewett, 653 F.2d at 91.
 
 
 15
 In the instant case, the special verdict form inquired first whether each plaintiff was denied promotion because of age, and then inquired as to the date each plaintiff should have been promoted.[5] The special verdict form was less than ideal. It would have been preferable had the special interrogatories inquired first whether there was an employer policy or practice of age discrimination that continued and was applied at least once within the statutory filing period, and second whether each plaintiff was denied promotion at any time because of this policy or practice. The advisory special interrogatories inquiring as to the date upon which each plaintiff should have been promoted and willfulness then could have followed in their present form. We do not find, however, that the jury's verdict in this case was fatally flawed.
 
 
 16
 When special interrogatories are submitted to a jury under Fed.R.Civ.P. 49(a) and the jury's responses do not provide an answer on a vital issue, then remand for a new trial is appropriate, at least as to the unresolved issue. See Iacurci v. Lummus Co., 387 U.S. 86, 87-88, 87 S.Ct. 1423, 1424-1425, 18 L.Ed.2d 581 (1967). But if there is a view of the case that makes the jury's answers to special interrogatories complete and consistent, we will adopt that view and enter judgment accordingly. See Griffin v. Matherne, 471 F.2d 911, 915-16 (5th Cir.1973) (citing Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd., 369 U.S. 355, 364, 82 S.Ct. 780, 786, 7 L.Ed.2d 798 (1962)).
 
 
 17
 The jury's verdict provides a sufficiently complete answer as to the scope of Technologies' policy and practice of age discrimination by finding that Furr, Petersen, and O'Connell should have been promoted August 15, 1978, and that Hunt should have been promoted May 1, 1981. The latter is clearly a finding of a discriminatory employment decision that occurred within the filing period. The special verdict answers finding that Technologies had discriminated against successful plaintiffs because of age, and the answers for three of those plaintiffs that they should have been promoted August 15, 1978, were not inconsistent, since the arrangement of questions in the verdict indicated that they were designed to separate an initial finding of liability from an inquiry relevant to the appropriate scope of the remedy. Cf. Fugitt v. Jones, 549 F.2d 1001, 1005 (5th Cir.1977) (special verdict questions not inconsistent, since designed to separate compensatory from punitive damages); see generally 9 C. Wright & A. Miller, Federal Practice and Procedure Sec. 2510 at 516-18 (1971 and Supp.1986).
 
 
 18
 Accordingly, we affirm the jury's finding of liability with respect to successful plaintiffs Furr, Petersen, O'Connell and Hunt. We also find no error in the promotion dates the jury specified for those plaintiffs.
 
 II
 
 19
 In this bifurcated trial the issue of liability was tried to a jury while the court retained the damages determination. Technologies argues that, even if we do not reverse the jury's verdict on the issue of liability, we must set aside the award of liquidated damages. Specifically, it alleges that the district court relied on an erroneous standard in finding that the ADEA violations at issue were willful, a prerequisite of an award of liquidated damages under 29 U.S.C. Sec. 626(b).
 
 
 20
 Although the court retained the ultimate decision on damages, it elected to obtain the jury's advisory opinion whether any violations found were willful, using the following instruction jointly submitted by plaintiffs and Technologies:
 
 
 21
 "Number 14. If you find in favor of the Plaintiffs on their claims of age discrimination, you must consider, ladies and gentlemen, whether they have proved by a preponderance of the evidence that the Defendant's actions in violation of the Age Discrimination in Employment Act were willful ones.
 
 
 22
 To find that the Defendant's conduct was willful, you must find by a preponderance of the evidence that the Defendant's actions were knowing and voluntary violations of the Age Discrimination in Employment Act; that is to say, the Plaintiffs must prove by a preponderance of the evidence that not only were they discriminated against on account of their age, but also that the Defendant knew of the existence of the Age Discrimination in Employment Act, and that discrimination against them occurred with such knowledge.
 
 
 23
 The Plaintiffs need not prove, however, that the Defendant had feelings of animosity or ill will toward them before you may find that any age discrimination was willful."
 
 
 24
 R. X at 14.
 
 
 25
 After the jury returned its special verdicts, finding willful violations of the ADEA with respect to Furr, Petersen, O'Connell, and Hunt, and after the court held a bench trial on the issue of damages but before decision, the Supreme Court decided Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985). In Thurston, the Supreme Court held that a violation is willful when " 'the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA.' " Id. at 126, 128, 105 S.Ct. at 624, 625 (quoting Airline Pilots Assoc. v. Trans World Airlines, Inc., 713 F.2d 940, 956 (2d Cir.1983)). The Supreme Court rejected a definition that would permit a finding of willfulness "if the employer simply knew of the potential applicability of the ADEA." Thurston, 469 U.S. at 127, 105 S.Ct. at 625. The Court also rejected a stricter standard that would require intent, in the sense of evil motive or bad purpose. Id. at 126 n. 19, 105 S.Ct. at 624 n. 19.
 
 
 26
 Technologies then asked the district court to make its findings with regard to damages in light of Thurston, rejecting the jury's advisory finding of willfulness because it had been made under a standard Thurston had deemed erroneous. The district court disagreed, stating that it thought its instruction comported with the Supreme Court's view in Thurston. It then made its own finding that Technologies' violation was willful, and awarded damages accordingly. We may not overturn the district court's finding on willfulness unless we are convinced that it erroneously applied the law or its factfinding is not supported by the evidence.
 
 
 27
 Although none of the parties, who agreed upon the instruction,[6] nor the court had the benefit of the Supreme Court's decision in Thurston at the time the instruction was given, we believe the challenged instruction, taken as a whole, requires knowing as well as voluntary violation of the ADEA. The instruction required "that the Defendant knew of the existence of the Age Discrimination in Employment Act, and that discrimination against them occurred with such knowledge." R. X at 14 (emphasis added). Further, the district court had read the Thurston decision, which states a clear standard, at the time it made its decision on willfulness. We are not convinced the court erred in applying the law. See Dreyer v. Arco Chemical Co., 801 F.2d 651, 658 (3d Cir.1986), cert. denied, --- U.S. ----, 107 S.Ct. 1348, 94 L.Ed.2d 519 (1987); Lindsey v. American Cast Iron Pipe Co., 810 F.2d 1094, 1099-1101 (11th Cir.1987).
 
 
 28
 The evidence also supports the district court's finding of a willful violation. Plaintiffs offered into evidence a Technologies management report, the Conover Report, for the express purpose of showing an overall company policy of discrimination against its aging technical personnel. In so doing, plaintiffs expressly referenced our decision in Blim, in which we approved the district court's admission of the same report in a remarkably similar case against the same employer for the same purpose, to show "an overall company policy of age discrimination." Blim, 731 F.2d at 1477. Thus Technologies should have been aware that age-based promotion policies and practices were in conflict with the ADEA no later than early 1980, when the district court's judgment in Blim was entered against this same employer. 496 F.Supp. 818 (W.D.Okla.1980).
 
 
 29
 There is other substantial, if contested, evidence to support the jury's, and the court's, conclusion that Technologies intentionally excluded these plaintiffs from the promotion process specifically because of their age, under a policy continuing at least into 1981. A Technologies manager was asserted to have stated that a plaintiff could not be promoted because "he was too damned old," R. IV at 18, and that the manager could do nothing to help him, because of his age. R. III at 53, 92. Plaintiffs also presented testimony of statements by Technologies managers that plaintiffs were too old to learn new technologies necessary to promotion, too old to be in supervisory or management positions, or that they did not have any future in installation because of age. R. III at 35, 53; R. V at 229-30, 240, 267-68, 296-97; R. VI at 323-24; R. VII at 580-82, 615-17. Cf. Archambault v. United Computing Systems, Inc., 786 F.2d 1507, 1514 (11th Cir.1986) (statement by employer's manager that he considered dismissed employee "too old for the position" in a " 'young man's game' which had 'outgrown him' " showed employer's reckless disregard for the provisions of the ADEA).
 
 
 30
 The picture of Technologies that emerges from the record comports with the Court's depiction in Thurston of the employer who " 'wholly disregards the law ... without making any reasonable effort to determine whether the plan he is following would constitute a violation of the law.' " 469 U.S. at 126, 105 S.Ct. at 624 (quoting Nabob Oil Co. v. United States, 190 F.2d 478, 479 (10th Cir.), cert. denied, 342 U.S. 876, 72 S.Ct. 167, 96 L.Ed. 659 (1951)). We therefore affirm the district court's finding that the ADEA violations here were willful, and we will not set aside the award of liquidated damages.
 
 III
 
 31
 The amount of damages is a factual issue, and we will uphold the district court's findings of fact unless they are clearly erroneous. See Fed.R.Civ.P. 52(a). "When a case is tried to the district court, the resolution of conflicting evidence and the determination of credibility are matters particularly within the province of the trial judge who heard and observed the demeanor of the witnesses." Higgins v. State of Oklahoma ex rel. Oklahoma Employment Security Commission, 642 F.2d 1199, 1202 (10th Cir.1981) (quoting Dowell v. United States, 553 F.2d 1233, 1235 (10th Cir.1977)).
 
 
 32
 Technologies challenges the back pay awards to all the successful plaintiffs, alleging that the 1984 supervisor earnings information had been overstated (because of a calculation error resulting in a "14-month year") in Technologies' initial provision of the salary data to plaintiffs and the district court. Technologies attempted to submit corrected figures during the one-day bench trial on damages issues. The district court, however, rejected the attempted substitution as "hearsay" and "without credibility." R.II, 184.
 
 
 33
 The record reveals that Technologies' assertion of the calculation error and its attempt to substitute corrected figures depends entirely on the testimony of one of Technologies' installation managers,[7] who admitted that he had no business records or other documents to support his testimony to "finding this mistake last night." R. XII at 104. That testimony itself is the bare assertion of a calculation error, corroborated only by the witness's account of a telephone conversation with a repromoted and now retired installation manager the night before.
 
 
 34
 " 'The most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of the uncertainty which his own wrong has created.' " Prudential, 763 F.2d at 1173 (quoting Bigelow v. RKO Radio Pictures, Inc., 327 U.S. 251, 265, 66 S.Ct. 574, 580, 90 L.Ed. 652 (1946)). We see no reason, on the basis of the record before us, to disturb the district court's choice of plaintiffs' figures, derived from Technologies' initially provided data, as a basis for calculating the back pay awards to all successful plaintiffs.
 
 
 35
 Technologies also challenges the district court's back pay award to plaintiff Hunt, because the court calculated the award with reference to the 1984 average earnings of all persons promoted to supervisor positions since January 15, 1978, not just those promoted May 1, 1981, the date the jury found that Technologies should have promoted Hunt. But in reviewing the district court's methodology in calculating damages, all we require is a reasonable basis for computation and reliance on the best evidence available in the circumstances. Cf. Thompson v. Kerr-McGee Refining Corp., 660 F.2d 1380, 1388 (10th Cir.1981), cert. denied, 455 U.S. 1019, 102 S.Ct. 1716, 72 L.Ed.2d 137 (1982). During the damages trial, Hunt presented testimony that establishing a base salary solely on the salary history of the three persons promoted on the date the jury found Hunt should have been promoted would have underestimated Hunt's salary level absent discrimination, in part because of those promotees' lack of prior experience. The district court's choice to premise a base salary for Hunt on an average of the earnings of all persons promoted into the installation supervisor category, whether or not they had been supervisors before, seems to us a reasonable alternative.[8] Accordingly, we will not overturn the court's calculation of plaintiff Hunt's back pay award.
 
 IV
 
 36
 Unsuccessful plaintiffs Easter, Fowler and Brown have also appealed to this court, alleging that the district court's use of a McDonnell Douglas/Burdine instruction on burdens of production and proof imposed an unduly heavy burden on the nonprevailing plaintiffs under circumstances in which they claim to have offered direct evidence of intentional age discrimination.[9] The guidelines set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and clarified in Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), are generally applicable in age discrimination cases. See Blim, 731 F.2d at 1477. The instruction given in this case comports with the burdens of production and proof we set forth in Blim, 731 F.2d at 1477. Moreover, in giving this instruction, the court expressly refrained from instructing the jury in terms of "the burden of going forward or when a prima facie case is established," R. VIII at 762-63, to avoid possible confusion resulting from use of technical terms.
 
 
 37
 It is true that the three-part shifting allocation of burdens of proof and production set forth in McDonnell Douglas and Burdine is inapplicable when a plaintiff can show direct evidence of the discriminatory basis of the employment decision. Thurston, 469 U.S. at 121, 105 S.Ct. at 621; EEOC v. Wyoming Retirement System, 771 F.2d 1425, 1430 (10th Cir.1985). The unsuccessful plaintiffs here, however, confuse their offer of specific instances of discriminatory statements, from which they then argue the determining cause of the employment decision may be inferred, with direct evidence that age was the cause of that decision. Direct evidence of causation is not before us here. Compare Thurston, 469 U.S. at 121, 105 S.Ct. at 621 (McDonnell Douglas test inapplicable when challenged transfer policy expressly discriminates on the basis of age) with Toussaint v. Ford Motor Co., 581 F.2d 812, 815 (10th Cir.1978) (McDonnell Douglas analysis applied when plaintiff established prima facie case of discrimination based on age by testimony to specific instances of discriminatory statements), and Blim, 731 F.2d at 1477 (same).
 
 
 38
 In any event, when both parties have fully presented their evidence, "the McDonnell-Burdine presumption 'drops from the case,' and 'the factual inquiry proceeds to a new level of specificity.' " United States Postal Service Board of Governors v. Aikens, 460 U.S. 711, 715, 103 S.Ct. 1478, 1481, 75 L.Ed.2d 403 (1983) (citation omitted). The factual inquiry at this point is whether the defendant intentionally discriminated against the plaintiff. The critical question for the jury is whether it believes the defendant's proffered reasons for the employment decision, rather than the plaintiff's assertion of impermissible discrimination. See id. at 715-16, 103 S.Ct. at 1481-82; see also Prudential, 763 F.2d at 1171 (question when both parties have fully presented their cases is "whether plaintiff has presented sufficient evidence to permit a reasonable fact-finder to conclude that age was a determinative factor in the employer's decision"). The challenged instruction faithfully reflects this focus.
 
 
 39
 In reviewing a challenge to a jury instruction, we consider the instructions given as a whole. Prudential, 763 F.2d at 1170. "[N]o particular form of words is essential if the instruction as a whole conveys the correct statement of the applicable law." Id. (quoting Perrell v. Financeamerica Corp., 726 F.2d 654, 656 (10th Cir.1984)). Because the challenged instruction adequately states the law governing this case, we decline to disturb the jury's conclusion that plaintiffs Easter, Fowler and Brown were not denied promotions because of their age in violation of the ADEA.
 
 V
 
 40
 Finally, prevailing plaintiffs Petersen, O'Connell and Hunt have cross-appealed, alleging that the district court erred by not ordering reimbursement for expert witness fees incurred in calculating damages, and for the costs of certain deposition fees.
 
 
 41
 Under the general costs statute, 28 U.S.C. Sec. 1920, a party's expert witness fees are not recoverable except to the $30-per-day limit applicable to any witness. Crawford Fitting Co. v. J.T. Gibbons, Inc., --- U.S. ----, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987). Although in the appropriate case, expert witness fees may be reimbursed as part of an attorney's fees award, Ramos v. Lamm, 713 F.2d 546, 559 (10th Cir.1983), attorney's fees were awarded to the successful plaintiffs here in accordance with stipulations by the parties. We therefore have no basis for inquiring further into the district court's finding that no expert fees should be awarded in the instant case.
 
 
 42
 Section 1920 permits recovery for the costs of taking, transcribing, and copying depositions "necessarily obtained for use in the case." 28 U.S.C. Sec. 1920(2), (4). We have stated that this definition authorizes recovery of costs with respect to all depositions "reasonably necessary to the litigation of the case." Ramos, 713 F.2d at 560.
 
 
 43
 "Depositions taken 'solely for discovery are not taxable as costs, but if the depositions were actually introduced in evidence or used at trial for impeachment purposes, then it is proper to conclude that they were necessarily obtained for use in the case.' ...
 
 
 44
 A deposition is not obtained unnecessarily even if 'not strictly essential to the court's resolution of the case.' Thus, if depositions were offered into evidence, were not frivolous and were 'within the bounds of vigorous advocacy,' costs may be taxed."
 
 
 45
 Bartell, Taxation of Costs and Awards of Expenses in Federal Court, 101 F.R.D. 553, 569 (1984) (citations omitted). We review the district court's award or denial of particular costs under an abuse of discretion standard. Ramos, 713 F.2d at 560.
 
 
 46
 Although the amount of recovery denied by the court is relatively small,[10] plaintiffs raise a potentially important question of abuse of discretion. Plaintiffs allege that the deposition costs at issue here were automatically disallowed by the clerk of the district court under standing court directions that reporter's fees are taxable only for depositions entered into evidence as exhibits.[11] Joint Answer Brief of Plaintiffs-Appellants at 36. At the court's order, the depositions in question were "published," rather than marked as exhibits; there is no question that they were actually used at trial. Because the court denied the plaintiffs' motion for review by minute order, we do not know the court's reasons for its decision.
 
 
 47
 There is a presumption in favor of award of costs; we generally require a court to state its reasons if it decides to deny costs to a prevailing party. Serna v. Manzano, 616 F.2d 1165, 1168 (10th Cir.1980). If the court's reasons here are simply a general policy to disallow reporter costs of all depositions not marked as exhibits, whether or not they are "published" and used at trial, then refusal to tax the costs of these depositions would be an abuse of discretion.
 
 
 48
 Accordingly, we remand for reconsideration on the question of taxing of deposition costs only. In all other respects, the judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable Wesley E. Brown, Senior United States District Judge for the District of Kansas, sitting by designation
 
 
 [1]
 Liquidated damages, additional amounts equal to the total awards for back pay, are payable only in cases of willful violation of the ADEA. See 29 U.S.C. Sec. 626(b); Blim v. Western Electric Co., Inc., 731 F.2d 1473, 1479 (10th Cir.), cert. denied, 469 U.S. 874, 105 S.Ct. 233, 83 L.Ed.2d 161 (1984). The court awarded Furr $95,458.00 in back pay and liquidated damages, plus $33,859.50 attorney's fees by stipulation of the parties. It awarded Petersen $82,619.60 in back pay and liquidated damages, O'Connell $96,157.60, and Hunt $57,021.36; by stipulation of the parties, their attorneys were to receive fees of $73,583.00 as part of the judgment
 
 
 [2]
 The ages of the demoted supervisors as of July 1, 1975, ranged from thirty-three to fifty-five; plaintiffs' ages at that time ranged from forty-one to forty-nine. Technologies asserts that the thirty-six supervisors demoted were those with the lowest performance rankings. Plaintiffs did not contend that age was a factor in these demotions
 
 
 [3]
 The ADEA protects individuals who are at least forty years of age but less than seventy years of age. 29 U.S.C. Sec. 631(a)
 
 
 [4]
 We also reject Technologies' argument that the jury's verdict was especially tainted by its consideration of promotions made before the statutory filing periods in accordance with an affirmative action plan. On appeal, Technologies seeks to depict this case as an impermissible challenge by plaintiffs to Technologies' affirmative action plan, which undisputedly began and ended before the statutory filing periods. But this is a mischaracterization of plaintiffs' case. Plaintiffs consistently alleged that Technologies pursued a policy and practice of promotion that discriminated because of age. It was Technologies that then offered affirmative action as one of the reasons for its promotion practices from 1978 through 1981, along with geographic considerations and technical job qualifications
 The jury was carefully instructed that it "must return a verdict for the Defendant and against the Plaintiff whose claim you are considering unless you find that that Plaintiff has established by a preponderance of the evidence that the Defendant's stated reasons are pretexts or coverups for what was in truth age discrimination." R. X at 13-14. Accordingly, we must conclude that the jury did not believe Technologies' asserted reasons for its failure to promote the four successful plaintiffs. That the jury believed one or more of Technologies' reasons for its failure to promote the three unsuccessful plaintiffs tends to verify that the jury carefully weighed the evidence for each plaintiff individually in accordance with its instructions, and did not indulge in the trading of answers, averaging, or any other method of decision forbidden by its instructions.
 Moreover, whether promotions under an affirmative action plan are insulated against challenge as discriminatory against other individuals is not before us here. The promotion dates specified by the jury for the successful plaintiffs do not conflict with promotions made under the affirmative action plan, showing that the jury excluded those promotions in this case as a matter of fact, if not of law.
 
 
 [5]
 Each special interrogatories form asked the following questions:
 NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 R. II at 151-57.
 For plaintiffs Furr, Petersen, and O'Connell, the jury answered interrogatory No. 1 in the affirmative and set August 15, 1978, as the date when each should have been promoted. For plaintiff Hunt, the jury answered Interrogatory No. 1 in the affirmative and set May 1, 1981, as the date when he should have been promoted.
 
 
 [6]
 Plaintiffs assert that Technologies' sponsorship of the instruction and failure to object to it until after completion of all phases of the trial forecloses their right to object now. Absent contemporaneous objection, we will ordinarily correct "only 'particularly egregious errors' affecting the fairness, integrity or public reputation of judicial proceedings ... [and] only when a 'miscarriage of justice' would otherwise result." Lusby v. T.G. & Y. Stores, Inc., 796 F.2d 1307, 1311-12 (10th Cir.), cert. denied, --- U.S. ----, 107 S.Ct. 275, 93 L.Ed.2d 251 (1986) (citations omitted). Here, however, the instruction and standard approved in Thurston stated a rule contrary to the controlling law of this circuit before the Supreme Court's decision. Cf. Robinson v. Heilman, 563 F.2d 1304, 1307 (9th Cir.1977) (no contemporaneous objection necessary when instruction correctly stated controlling law at the time given). Also, Technologies brought the Thurston standard to the court's attention at its earliest opportunity, and before the determination of willfulness by the district judge, who for all damages issues was the factfinder
 
 
 [7]
 Since our review of the district court's rejection of the witness's testimony is in part a review of the court's determination of that witness's credibility, it is also relevant to note that the witness is the same individual to whom most of the derogatory statements about plaintiffs' ages as disqualifying them for promotion were attributed during the liability phase of the trial
 
 
 [8]
 The court based the awards to plaintiffs Furr, Petersen and O'Connell on the 1984 average earnings of the five former supervisors promoted to supervisor positions during 1978. Although Technologies challenges the 1984 earnings figures themselves with respect to all the back pay awards, Technologies does not otherwise challenge the district court's calculations of the awards to Furr, Petersen and O'Connell
 
 
 [9]
 The instruction challenged by the unsuccessful plaintiffs was given to the jury as follows:
 "Number 12, please. The Plaintiffs and Defendant have each set out their various claims and defenses in this case and presented evidence in support of their respective positions.
 Simply stated, it is the Plaintiffs' position that the Defendant intentionally discriminated against the Plaintiffs on account of age.
 It is the Defendant's position that affirmative action, geographic considerations and specific technical requirements were the reasons why employees other than the Plaintiffs have been promoted.
 You are instructed that these stated reasons are legitimate reasons for which the Defendant was entitled to make the business judgments it did so long as the reasons were not coverups or pretexts for discrimination.
 You are further instructed that Defendant's reasons set forth above constitute a defense to a claim of age discrimination and you must return a verdict for the Defendant and against the Plaintiff whose claim you are considering unless you find that [the] Plaintiff has established by a preponderance of the evidence that the Defendant's stated reasons are pretexts or coverups for what was in truth age discrimination.
 In other words, what each Plaintiff must prove is that the Plaintiff's age was a determining factor why the Defendant failed to promote him rather than because of the Defendant's stated reasons."
 R. X at 13-14.
 
 
 [10]
 Plaintiffs sought reimbursement for reporter's costs for the depositions of Kenneth Szymanski ($359.00), Roger S. Graham ($74.25), D.E. Winchester ($165.00), and Horace H. Wells ($339.00), all of whom were called as witnesses, for a total of $937.25
 
 
 [11]
 "Rule 54(d), Federal Rules of Civil Procedure, provides 'costs may be taxed by the clerk on one day's notice.' As a procedural matter, therefore, a bill of costs is initially filed with the clerk rather than with the court. Should the party seeking costs be dissatisfied with the clerk's actions, or should the party against whom they are to be taxed object, 'on motion served within 5 days thereafter, the action of the clerk may be reviewed by the court.' Such review by the court is a de novo determination. See Fleet Investment Co. v. Rogers, 87 F.R.D. 537 (W.D.Okl.1978), aff'd, 620 F.2d 792 (10th Cir.1980)."
 Bartell, Taxation of Costs, 101 F.R.D. at 560.