James LATIMORE, Plaintiff,

v.

The PRESIDENT AND BOARD OF GOV-
ERNORS OF the UNIVERSITY OF
NORTH CAROLINA AT CHARLOTTE;
E.K. Fretwell, Jr., Chancellor of the
University of North Carolina at Char-
lotte; James H. Werntz, Jr., Vice Chan-
cellor for Academic Affairs for the
University of North Carolina at Char-
lotte; and George Rent, Chairman of
the Department of Sociology, Anthro-
pology and Social Work at the Univer-
sity of North Carolina at Charlotte, De-
fendants.

No. C–C–87–003–P.

United States District Court,
W.D. North Carolina,
Charlotte Division.

Sept. 24, 1987.

George Daly, Charlotte, N.C., for plain-
tiff.

William M. Steimer, UNC at Charlotte,
Charlotte, N.C., Edwin Speas, Sp. Deputy
Atty. Gen., N.C. Dept. of Justice, Raleigh,
N.C., for defendants.

## MEMORANDUM OF DECISION

ROBERT D. POTTER, Chief Judge.

This is an age discrimination case.

Plaintiff filed a Complaint on January 2,
1987 alleging violation by Defendants of 29
U.S.C. § 621, *et seq.*, 42 U.S.C. § 1983, and
the North Carolina Law of Contracts.

On the same date Plaintiff filed a Motion
for Preliminary Injunction moving that De-
fendants be preliminarily enjoined to con-
tinue to employ Plaintiff as an Assistant
Professor of Sociology and hire no replace-
ment for him.

On February 17, 1987, Plaintiff, with
leave of Court, filed his first supplemental
Motion for Preliminary Injunction and First
Amended and Supplemental Complaint,
moving that Defendant Fretwell be prelimi-
narily enjoined to respond to and resolve
Plaintiff's pending administrative appeal
from denial of tenure, and in the Supple-
mental Complaint praying the Court to de-
clare unlawful the failure of Defendants
Rent and Werntz to award Plaintiff tenure
and renew his contract, declare unlawful
the refusal of Defendants Fretwell and the
President and Board of Governors to re-
spond to and resolve Plaintiff's administra-
tive appeal, permanently enjoin Defendants
to grant Plaintiff tenure and to offer him
rehire as of July 1, 1987, permanently en-
join Defendant Fretwell to respond to and
resolve Plaintiff's administrative appeal,
and award Plaintiff costs and attorney's
fees.

A hearing on Plaintiff's Motion for Preliminary Injunction and Plaintiff's First Supplemental Motion for Preliminary Injunction was held at Charlotte, North Carolina on February 27, 1987 at which George Daly, Esquire appeared for Plaintiff and Thomas J. Ziko, Assistant Attorney General for the State of North Carolina, appeared for Defendants.

The Court, in an Order filed March 10, 1987, denied the Motion for a Preliminary Injunction and First Supplemental Motion for Preliminary Injunction primarily on the ground that Plaintiff failed to forecast evidence sufficient to show a substantial likelihood of success on the merits of his action.

On March 19, 1987, Plaintiff, with leave of Court, filed a Second Amended Complaint amending his prayer for relief against Defendant Fretwell praying that he have and recover from him such sums as his proofs at trial shall show, for Defendant Fretwell's right to petition for redress of grievance.

This action came on for trial at Charlotte, North Carolina, on September 14, 1987. Plaintiff was represented by George Daly, Esquire, and Defendants by Edwin M. Speas, Jr., North Carolina Special Deputy Attorney General and Thomas J. Ziko, North Carolina Assistant Attorney General.

Before the trial commenced, the Court heard arguments on Defendants' Motion for Partial Summary Judgment as to Defendant E.K. Fretwell, Chancellor of UNCC on the ground that he was entitled to qualified immunity as to Plaintiff's First Amendment claim. Plaintiff had sought to have Defendant Fretwell respond to Plaintiff's pending administrative appeal from denial of tenure. Defendants' Motion for partial summary judgment as to Defendant Fretwell was GRANTED.

At the conclusion of Plaintiff's evidence Defendants moved for a directed verdict pursuant to Rule 50 of the Fed.R.Civ.P. as to James H. Werntz on the grounds that he was not a participant in any administrative action unfavorable to Plaintiff and as to Defendant Rent on the ground that he was not an employer.

Defendants further moved for a directed verdict on the ground that there was insufficient evidence to create an issue for the jury.

## DISCUSSION

Whether the evidence is sufficient to create an issue of fact for the jury is solely a question of law to be determined by the Court:

> [T]he federal courts do not follow the rule that a scintilla of evidence is enough. The question is not whether there is literally no evidence supporting the party against whom the Motion is directed, but whether there is evidence upon which a jury could properly find a verdict for that party.

*Wright & Miller, Federal Practice and Procedure: Civil* Sec. 2524.

Taking all Plaintiff's evidence into consideration and considering it in the light most favorable to Plaintiff, his evidence shows the following:

(1) He came to UNCC in 1976 at the age of 45 years as a lecturer in Sociology, obtaining his Ph.D. in 1979.

(2) In 1980 at the age of 49 years he was promoted to Assistant Professor of Sociology for a four year term, and was reappointed in 1984. The Assistant Professor position is a "tenure track" position, entitling the employee to be considered for tenure after a certain number of years.

(3) The Faculty Review Committee gives an Annual Review to each faculty member of the Department of Sociology.

(4) Plaintiff as a non-tenured member of the faculty was subjected to this review for the years 1980 through 1985. Plaintiff offered Exhibits 2, 3, 4, 5, 15, and 24, his annual reviews for the years 1980, 1981, 1982, 1983, 1984 and 1985 respectively with Exhibit 24 being an overlap with Exhibit 15.

(5) Exhibit 2 indicated that Plaintiff's teaching was in the satisfactory range, his professional involvement was

above the satisfactory range and his service was below the satisfactory range.

(6) Exhibit 3 indicated that Plaintiff's teaching was satisfactory and within the departmental average but that his professional activities and service were below the departmental average.

(7) Plaintiff's Annual Review for 1982, Exhibit 4, indicated under the heading "teaching" that his student evaluations were just above satisfactory, but that his number of classes, preparations, students, new courses offered, advising, awards for teaching graduate/under-graduate student activities, etc. were between "negligible," "deficient," "inferior" and "disappointing" on the low side and "mediocre," "unimpressive," "insufficient" and "unremarkable" on the high side. Exhibit 4 further indicated that Plaintiff's professional activities as to chairmanship of meetings, number of meetings attended, etc. were "substantial," "impressive," "commendable" and "noteworthy." Exhibit 4 showed Plaintiff's publications and presentations were "negligible" and "inferior" and his service to the university and the community was "mediocre" and "unimpressive."

(8) Plaintiff's Exhibit 5—Annual Review for 1983 indicated that Plaintiff had a book accepted for publication. (There is some question about whether this was anything more than a condensation of his dissertation for his Ph.D.) The exhibit indicated that his teaching fell within the departmental mean, that his professional development was progressing at an exceptional manner, and that as to service Plaintiff was providing his fair share.

(9) Plaintiff's Exhibit 15, his evaluation for 1984, showed his student-based evaluations indicated satisfactory performance, and as evaluated by his colleagues fell within the average to good category. He was congratulated for his establishment of a Productivity Center task force and was informed that "... this year's activities indicate

a strong progression toward next year's consideration of tenure and promotion."

(10) Plaintiff's Exhibit 24, the evaluation dated May 14, 1985, indicated his teaching evaluation for the past two semesters as seen by his students, was very good and that his performance is "about average" for the Department. The Committee found some cause for concern for Plaintiff's definitely below average services to the University and the Community.

(11) Plaintiff came up for tenure consideration in the Fall of 1985.

(12) On Friday, November 11, 1985, Defendant Rent called Plaintiff at his home and told him the review committee did not recommend him for tenure and that he (Rent) concurred.

(13) Plaintiff's Exhibit 44 is the "Tenure Policies, Regulations and Procedures of the University of North Carolina at Charlotte." Section 4 reads in pertinent part as follows:

Section 4. PROCEDURES FOR REVIEW FOR APPOINTMENT, REAPPOINTMENT, PROMOTION, AND THE CONFERRAL OF PERMANENT TENURE

A. Review Committees

1. Department Review Committee on Reappointment, Promotion, and Tenure

Each department shall have a committee that advises the chairman on promotion, tenure, and reappointment. The department review committee shall be elected from the department faculty by the full-time department faculty members who hold professorial rank or the rank of instructor. A majority of its members shall have been awarded permanent tenure. If a department has so few tenured faculty members that this consultation may not produce advice adequately representative of the department faculty's views, the chairman shall consult with other senior members of the department familiar with the candidate's work.

2. College Review Committee on Reappointment, Promotion, and Tenure

Each college shall have a college committee that has been elected from the faculty of the college by the full-time faculty members of that college who hold professorial rank or the rank of instructor. A majority of its members shall have been awarded permanent tenure.

.     .     .     .     .

D. Procedures for Review for Reappointment, Promotion, and Tenure

After consulting with the assembled department review committee, the department chairman shall submit recommendations of promotion, permanent tenure, and reappointment to the dean of the college. If the department review committee's opinion differs with that of the chairman/administrator, its opinion shall be forwarded to the administrator at the next level.

If the department chairman's decision is not to reappoint a faculty member, it is a final decision except as it may later be reviewed in accordance with the procedures of Section 5. Each such decision shall be communicated for information through the administrative channels prescribed for review had the decision been to reappoint.

The chairman shall, by a simple, unelaborated written statement notify each faculty member under consideration for reappointment, promotion, or permanent tenure whether he will recommend reappointment, promotion, or permanent tenure or has made a decision not to reappoint. At the same time, the chairman shall notify all department faculty members that this notice has been given.

If the department chairman's decision is to recommend reappointment, promotion, or permanent tenure, the following procedure shall be used. After consulting with the assembled college review committee, the dean shall make recommendations to the Vice Chancellor for Academic Affairs. If the college review committee's opinion differs with that of the dean/administrator, its opinion shall be forwarded to the administrator at the next level. Recommendations for faculty members in the Library shall be forwarded to the Provost.

The dean shall, by simple, unelaborated written statement, notify each faculty member under consideration what recommendation has been made concerning him and at the same time shall notify all college faculty members that recommendations have been sent forward.

The Vice Chancellor shall consider the recommendations, confer with the Provost and the Chancellor, and make recommendations to the Chancellor for action. The Provost shall present recommendations from the Library to the Chancellor.

If the Chancellor decides not to recommend the reappointment, the promotion, or permanent tenure, that decision shall be handled as if it had been made by the department chairman. If the Chancellor concurs in a recommendation that will confer permanent tenure, he shall consult with the Board of Trustees and, if he still concurs in the recommendation, he shall forward the recommendation to the President and the Board of Governors for final approval. All other personnel actions in which the Chancellor recommends reappointment or promotion shall be forwarded by him to the Board of Trustees for final approval unless the approval authority is delegated by that Board.

If the recommendation of the dean, or the Provost in the case of a faculty member in the Library, is not to promote, the faculty member has the right to appeal his case to the Grievance Committee (Section 9B).

(14) After the Sociology Department refused to grant Plaintiff tenure he pursued the matter through University administrative channels. The College of Arts and Sciences reviewed the matter

and requested reconsideration by the Department of Sociology and Anthropology (Plaintiff's Ex. 37). This was done, but there was no change in the Review Committee's decision.

(15) Plaintiff then was heard by the University Hearing Committee which found that the refusal to grant tenure implied malice toward Plaintiff, but did not mention age discrimination. (Plaintiff's Ex. 40).

(16) Plaintiff testified that the only discriminatory remarks he had heard Defendant Rent make were on two occasions. Once, Rent in discussing an applicant said as to the older applicant "it would take too much to get him." Plaintiff also testified as to another applicant that Rent had referred to him as "some retired fellow."

(17) Plaintiff prepared and offered Exhibit 39 which indicates that between 1980 and 1985 four candidates below the age of 40 received tenure and three candidates, including himself, over the age of 40 were denied tenure. Cross examination revealed that Dr. Stroud and Plaintiff were appointed after age 40 by Dr. Rent. Nor was there any evidence as to professional comparison between those under 40 and those over 40, except for Dr. Levy and Plaintiff.

(18) Plaintiff offered Exhibits 52, 53, 54, 55, and 56 presumably for the purpose of demonstrating that Dr. Janet Levy was not any more qualified to be tenured than was the Plaintiff. Therefore, the Court will analyze these exhibits.

(19) Exhibit 54 indicates that in five of the categories of professional development Levy equaled or exceeded Plaintiff in books published, articles published, professional papers presented, research grants, and editing works by others. In three of the categories Plaintiff exceeded Levy, i.e., books under contract, Plaintiff was 1, Levy 0. In articles accepted, Plaintiff was 2, Levy 0. In professional sessions organized, Plaintiff was 3, Levy 1.

(20) On cross examination, Plaintiff testified that in preparing Exhibit 54, he had used Exhibit 36, his vita, and Exhibit 52, Levy's vita. Plaintiff further testified that in preparing his Exhibit 54 he had *not* given Levy credit for any of the following:

(1) Six book reviews which appeared in journals.

(2) Eight archeological expeditions.

(3) Chairperson, archeological council.

(4) Levy's work in progress.

(21) Plaintiff's Exhibit 55 indicated that between 1980 and 1985 Levy served on 11 committees and Latimore on 17 committees; with no further information as to what the committees were.

(22) Plaintiff further testified that he was hired in 1976 when he was 45 years old, that he was the oldest in the department in 1980 when he was promoted to Assistant Professor, and that he was reappointed in 1983 on the recommendation of Defendant Rent.

(23) Plaintiff further testified on cross-examination that he had no reason to believe that any member of the review committee voted against tenure for him because of his age.

(24) He further testified on cross examination that his one book *"Weeding Out the Target Population: The Law of Accountability in a Manpower Program,* Greenwood Press, 1985, was partly based on his dissertation for his Ph.D. and that he had received something less than $1,000 in royalties.

(25) He further testified on cross examination that he did not come to the campus except on Monday, Wednesday, and Friday, when he had class, even though part of his duties were to consult with students.

(26) He further testified on cross that personal malice by Defendant Rent was the reason tenure was denied, and that age was not the only reason.

In essence, Plaintiff's evidence that he was denied tenured comes down to four things:

(a) He believes he was discriminated against because of malice and age.

(b) There were seven tenure decisions by Defendant Rent between 1980 and 1985, with four below the age of 40 receiving tenure and three above age 40 not receiving tenure.

(c) His flawed and inaccurate comparison between his vita and that of Janet Levy.

(d) Remarks attributed to Defendant Rent.

## CONCLUSIONS OF LAW

■ Plaintiff's evidence does not make a *prima facie* case of age discrimination.

"Whether the evidence is sufficient to create an issue of fact for the jury is solely a question of law to be determined by the Court.... [T]he federal courts do not follow the rule that a scintilla of evidence is sufficient. The question is not whether there is literally no evidence supporting the party against whom the Motion is directed, but whether there is evidence upon which a jury could properly find a verdict for that party." *Wright & Miller, Federal Practice and Procedure:* Civil Section 2524.

It is axiomatic in ruling on a Motion for directed verdict pursuant to Rule 50, that the Court must view the evidence favorably to the party against whom the Motion is made. Essentially, the question is whether there can be but one conclusion as to the verdict that reasonable men could reach.

The only question before the Court in this case is whether Plaintiff has produced sufficient evidence to make out a *prima facie* case that "but for" claimant's age he would have been granted tenure.

In *Lovelace v. Sherwin-Williams Co.,* 681 F.2d 230, 241 (4th Cir.1982) the court, in deciding the question of when there has been sufficient evidence to submit an age discrimination case to the jury, cited *Ralston Purina Co. v. Edmonds,* 241 F.2d 164, 168 (4th Cir.1957) stating:

Judge Sobeloff, finding insufficient the circumstantial (and opinion) evidence offered to prove the necessary causation in a products liability case, put it that only evidence "which shows a 'probability' and not a mere 'possibility' " would suffice to allow jury consideration.

Plaintiff has claimed that Defendants' failure to grant tenure to him was because of age discrimination. Where discrimination is asserted on the basis of age there has to be judicial review, but that does not mean that a finding of age discrimination is automatic.

Plaintiff has not provided the Court with the testimony of any of the members of the review committee, nor any of the minutes of the meetings of the review committee, nor any correspondence of the members. Neither has Plaintiff provided oral or written comments by any member of the review committee, nor of anyone in the department, or in the University for that matter, which would indicate any bias because of age against any member of the faculty, including Plaintiff.

There are a number of ways in which a plaintiff may prove a *prima facie* case of age discrimination, depending on plaintiff's legal theory, *i.e.,* disparate treatment, disparate impact, and the particular facts of the case. The *McDonnell Douglas* four element test (411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973)) has been generally accepted as a guideline for establishing a *prima facie* case under the ADEA.

■ An additional requirement to the *McDonnell Douglas* elements is that the plaintiff in an ADEA case must also introduce some evidence that the employer's conduct was actually based on age. In other words, Plaintiff in this case must do more than show that he is within the protected age group and adversely affected by the committee's decision. Plaintiff must show that *age* was a factor. *Pena v. Brattleboro Retreat,* 702 F.2d 322 (2nd Cir. 1983); *EEOC v. Western Electric Co., Inc.,* 713 F.2d 1011, 1016 (4th Cir.1983); *Touissaint v. Ford Motor Co.,* 581 F.2d 812 (10th Cir.1978).

Plaintiff here has not produced any direct evidence or specific instances of *age* discrimination. His evidence relevant to whether he was denied tenure because of age is circumstantial in the form of the last

names of four persons under the age of 40 granted tenure between 1980 and 1985 and three persons over age 40 denied tenure in that same period, (Plaintiff's Ex. 39).

Circumstantial evidence in the form of statistics may be considered by the Court. However, statistics must not be accepted uncritically, without careful consideration of all relevant factors. *Logan v. General Fireproofing Company*, 521 F.2d 881, 883 (4th Cir.1971). This is particularly true in tenure decisions in the academic setting.

The only evidence as to the "possibility" of age discrimination that Plaintiff has produced in this case is Exhibit 39 which indicates that between 1980 and 1985 Defendant Rent made tenure decisions favorable to four persons under 40 and unfavorable to three persons over forty, including Plaintiff. This exhibit does not carry his burden of showing a "probability" of age discrimination by Defendants.

There is no vita or other information as to any of the persons listed on Exhibit 39 either below 40 or over 40, except for Plaintiff and Janet Levy, under 40.

Exhibit 39 contains no information as to what any of the other persons listed on that Exhibit taught, how long they had been at the University, their educational background, their annual reviews, what, if any, books they had published, their student evaluations, their University and Community service, articles they had published —nothing but their last name and age. Except for Levy, we learned nothing more about any of these persons. And, in fact, Plaintiff in oral argument relied exclusively on the comparison of the qualifications of Levy, an archeologist, and Plaintiff, a sociologist, even though he admitted on cross that he had not given Levy credit for book reviews, archeological expeditions, nor credit for acting as chairperson of an archeological council.

Thus, Plaintiff's case comes down to bare statistics (except for Levy) of the last names of four persons under 40 who were given tenure and of the last names of three persons over 40, including Plaintiff, who were denied tenure and to a remark by Defendant Rent in reviewing an applicant

that the "older applicant would take too much to get"—a truism. Plaintiff also attributes to Defendant Rent a remark he made in reference to another applicant as "some retired fellow"—not exactly "smoking gun" discriminatory remarks by Defendant Rent.

In this case the review committee had unanimously recommended against tenure for Plaintiff. Plaintiff on cross-examination testified he knew of no reason why any of the members, his peers, would vote against him because of his age. Plaintiff produced a number of letters from his friends recommending a reversal of the review committee's decision. The writers of those letters were not on the review committee, however, which had access to all the information necessary for their decision and also had the responsibility to make the decision as to whether Plaintiff should be granted tenure.

The ADEA Act, Title 29, Section 623(a) states:

It shall be unlawful for an employer—

(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, *because* (emphasis added) of such individual's age.

(2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise affect his status as an employee *because* (emphasis added) of such individual's age;

. . . .

In *Smith v. University of North Carolina*, 632 F.2d 316, 344, 345 (4th Cir.1980), the court said:

Tenure is one of the most difficult of all academic decisions. "[T]enure is a privilege, an honor, a distinctive honor, which is not to be accorded to all ... professors. It is a very high recognition of merit [and] the ultimate reward for ... academic excellence. It is to be awarded in the course of search for fundamental

merit." *Johnson v. University of Pittsburgh*, 435 F.Supp. 1328, 1353 (W.D.Pa. 1977). It is a decision which, in addition to delineating basic qualifications, involves a degree of subjectivity. *Furthermore, since professors are individuals and perform different roles within a department, it is difficult to compare the reasons for promoting one faculty member with the reasons for promoting or not promoting another.* (emphasis added).

The members of the review committee established by the University (Plaintiff's Ex. 44) made up of department faculty have the expertise to make a determination as to Plaintiff's value to the University as a tenured professor.

Plaintiff's Exhibit 53 indicates he was on more committees than Dr. Levy. The number of committees each was on is of very little relevance to Plaintiff's *prima facie* case of age discrimination. There are committees and then there are committees. It is quality not quantity which is to be evaluated. Similarly, Plaintiff's Exhibit 56 "Community Service" adds little or nothing to the question of whether Plaintiff has made a *prima facie* case of age discrimination.

None of Plaintiff's Exhibits 54, 55, or 56 help to answer the question before the Court and that is: Did Plaintiff fail to receive tenure *because* of his age?

A teacher's competence and qualifications for tenure or promotion are by their very nature matters calling for highly subjective determinations, determinations which do not lend themselves to precise qualifications and are not susceptible to mechanical measurement or the use of standardized tests. These determinations are in "an area in which school officials must remain free to exercise their judgment" especially since these determinations present unique questions for judgment by those with expertise in the specialized academic area, capable of making professional evaluations of those elusive and intangible qualities and talents expected of the scholar and teacher. Courts are not qualified to review and

substitute their judgment for these subjective, discretionary judgments of professional experts on faculty promotions or to engage independently in an intelligent informal comparison of the scholarly contributions or teaching talents of one faculty member denied promotion with those of another faculty member granted a promotion; in short, courts may not engage in "second-guessing" the University authorities in connection with faculty promotions. Yet that is exactly what the plaintiff seeks by his action to have the court do.

*Clark v. Whiting*, 607 F.2d 634, 639 (4th Cir.1979) (footnotes omitted).

Plaintiff has apparently reached the conclusion that there was malice toward him by his peers. But the issue before the Court is whether or not he was denied tenure *because of age*.

For example, on January 27, 1984, in organizing his "productivity institute" at UNCC, Plaintiff wrote several of his colleagues (Plaintiff's Ex. 9) requesting that they meet with him. This letter stated: ".... In case nobody shows up, it would be nice to know that it's due to conflicts rather than waning interest (*or personal malice*)." (Emphasis added).

In summary, Plaintiff was reviewed by his peers on a properly constituted committee organized for the purpose of determining whether he should receive tenure. What Plaintiff is seeking is for a jury to reverse the subjective judgment by the faculty members of the review committee with no evidence of discrimination against Plaintiff by the committee *because* of Plaintiff's age.

In practically all walks of life, especially in business and the professions, someone must be charged with the ultimate responsibility of making a final decision even as are the Courts. The computer, highly developed though it may be, is not yet qualified to digest the punch cards of an entire faculty and advise the waiting and expectant onlooker of its decision as to hiring or promotion. Even were it so capable a new rule would have to be

added to appellate rules entitled "Appeal from a Computer."

*Faro v. New York University,* 502 F.2d 1229 at page 1232 (2nd Cir.1974).

In conclusion, the Court finds that Plaintiff has not produced sufficient evidence taken in the light most favorable to Plaintiff upon which a jury could properly find a verdict for Plaintiff that he was denied tenure *because of age.*

The Court, having determined that Defendants' Motion for a directed verdict at the close of Plaintiff's evidence, pursuant to Rule 50(a) of the Federal Rules of Civil Procedure, should be granted, the Court does not reach Defendant's Motion for a directed verdict as to Defendants Werntz and Rent on the grounds heretofore stated.

The Court will file a judgment of directed verdict as to all Defendants simultaneously with this Memorandum of Decision.